(No. 63591.—

*In re* STEPHEN LEVY, Attorney, Respondent.

*Opinion filed January 30, 1987.*

Scott Renfroe, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sidney Z. Karasik, of Chicago, for respondent.

JUSTICE SIMON delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) charged the respondent, Stephen Levy, with knowingly negotiating a check containing a false endorsement. The Hearing Board of the ARDC concluded that Mr. Levy was guilty of the offense charged and determined that the proper sanction for his offense was a reprimand. The Administrator carried the matter to the Review Board and argued before that Board that the respondent's misconduct warranted suspension from the practice of law. The Review Board affirmed the Hearing Board's determination, and the matter comes to this court upon the Administrator's ex-

ceptions to the Review Board's decision.

There is essentially no dispute over the facts. The issue we are called upon to decide is what sanction should be imposed—a reprimand, as the hearing and review boards decided, a two-year suspension as the Administrator demands, or other discipline.

Mercedes Hoffman retained the respondent to represent her in a dissolution-of-marriage action against her husband, Sam Hoffman. Several months later, Mrs. Hoffman and her sister, Rita Homer, were injured in an automobile accident and employed the respondent to represent them in their suit against the other driver. The respondent negotiated a settlement with the driver's insurance company.

By the time of the settlement, the dissolution proceeding was being hotly contested. Mrs. Hoffman and her husband had separated prior to the automobile accident, and at the time of the settlement Mr. Hoffman was not providing his wife with any financial support. Believing that Mr. Hoffman had no potential interest in the settlement, the respondent requested the insurance company to issue a settlement check payable only to Mrs. Hoffman. The adjuster, however, informed the respondent that the insurance company's policy was to include spouses on the release form and settlement check and that it would therefore be necessary to include Mr. Hoffman's name on both the form and the check.

Respondent received two releases and two checks, one set made out to Mercedes and Sam Hoffman and the other to Rita and Glen Homer. Respondent called Mrs. Hoffman and asked her to bring her sister and their husbands to his office to sign the documents. Upon arriving at the respondent's office, Mrs. Hoffman informed the respondent that she had not asked her husband to attend because he had no interest in the lawsuit. The respondent testified that he was then called out of the room to

receive a phone call and that when he returned, he noticed Mr. Hoffman's signature on both Mrs. Hoffman's release and her check. The respondent asked how the signatures got there, and Mrs. Hoffman replied that Mr. Homer had signed her husband's name.

The respondent's position is that although he was uncomfortable with the false signature, he endorsed the check, cashed it at his bank, and gave Mrs. Hoffman the client's share, because Mr. Hoffman had not been making support payments and Mrs. Hoffman claimed that she needed the settlement proceeds. After the respondent mailed the release forms to the insurance company, they were returned because the signatures had not been witnessed. The respondent signed his name as a witness for the signatures of Mrs. Hoffman, Mrs. Homer and Mr. Homer; he left a blank space besides the purported signature of Sam Hoffman and returned the releases to the insurance company.

Upon discovering that his name had been falsely signed, Mr. Hoffman complained to the ARDC. He testified that he called the respondent several times concerning his purported signatures; he admitted telling the respondent that he was going to report him to the "Registration Office." On cross-examination Mr. Hoffman conceded that he had no interest in the settlement proceeds.

The respondent stated that Mr. Hoffman phoned him several times and was abusive. According to the respondent, Mr. Hoffman demanded $60,000 and threatened to report him to the authorities unless the respondent paid Hoffman $60,000. The respondent explained that he thought Mr. Hoffman was asking for this amount because in the dissolution proceeding it was established that Mr. Hoffman had diverted $62,567.60 from his business. The respondent was contending that Mr. Hoffman was obligated to return this sum so that it could be ap-

portioned as marital property.

The Administrator maintains that the respondent's conduct was fraudulent within this court's definition of fraud in *In re Armentrout* (1983), 99 Ill. 2d 242. *Armentrout* involved a State's Attorney's attempt to deceive and defraud by organizing a scheme to forge signatures on petitions in order to induce election officials to place a referendum proposition on the election ballot. In *Armentrout* this court concluded that "[a]cts of forgery most certainly involve 'dishonesty, fraud, deceit, [and] misrepresentation' and are contrary to the bar's fundamental obligation of honesty." 99 Ill. 2d 242, 251, quoting *In re Lamberis* (1982), 93 Ill. 2d 222, 228.

*Armentrout* is clearly distinguishable from this case. An essential element of forgery is an intent to defraud. (Ill. Rev. Stat. 1985, ch. 38, par. 17—3.) The statute defines an intent to defraud with respect to the crime of forgery as "an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property." (Ill. Rev. Stat. 1985, ch. 38, par. 17—3(b).) Not only did Mr. Hoffman concede that he had no interest in his wife's settlement, but also the Hearing Board concluded that the respondent had no intent to commit fraud. This conclusion is clearly proper because the respondent could not defraud Hoffman of an interest he did not have. The respondent's conduct, therefore, is not comparable to the forgery involved in *Armentrout*, the essential element involved in the misconduct in that case—an intent to defraud—not being present here.

The Administrator's argument that the respondent deserves a suspension because his conduct was "strikingly similar" to the conduct involved in *In re Thebeau* (1986), 111 Ill. 2d 251, lacks merit. In *Thebeau*, the attorney notarized signatures he did not witness, misrepresented facts to the circuit court, and knowingly permit-

ted his client to commit forgery. (111 Ill. 2d 251, 256.) Further, Mr. Thebeau presented no mitigating facts or circumstances and did not produce any character witnesses in his support. In this case, the respondent produced several witnesses, including an appellate court judge who attested to his integrity. In addition, unlike *Thebeau*, the respondent neither failed to disclose pertinent facts to a court nor permitted his client to obtain through forgery anything of value belonging to another.

In determining what sanctions should be imposed a significant consideration is that although the respondent's conduct was imprudent, it caused harm to nobody; the insurance company lost nothing and neither did Mr. Hoffman. By endorsing the check the respondent personally guaranteed the insurance company against any loss. All of the cases cited by the Administrator (see *In re Heilgeist* (1984), 103 Ill. 2d 453; *In re Nadler* (1982), 91 Ill. 2d 326; *In re Chernoff* (1982), 91 Ill. 2d 316; *In re Abbamonto* (1960), 19 Ill. 2d 93; *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110. Ill. App. 3d 569) involve situations where someone was harmed as a result of an attorney's misconduct, and therefore those cases are not relevant to this disposition.

The Hearing Board pointed out that respondent was candid in reciting what he did and concluded that the chance that he would repeat the conduct which brings him before us is slim, and we agree. The purpose of attorney discipline is to "safeguard the public and maintain the integrity of the legal profession" as well as "to determine whether the attorney is a proper person to be permitted to practice his profession." (*In re Neff* (1980), 83 Ill. 2d 20, 24.) Neither the public nor the legal profession will be endangered by permitting the respondent to continue to practice, for we agree with the conclusion of the hearing and review boards that respondent is capable of acting with integrity as an attorney in the future.

Although we agree with the Administrator that the motives of those who report misconduct to the Commission are generally immaterial (see *In re Thompson* (1963), 30 Ill. 2d 560, 561), we should not ignore the fact that the charges were filed not because the respondent attempted to deprive Mr. Hoffman of a *bona fide* interest, but rather because of Mr. Hoffman's anger over the pressure the respondent had placed on him in the dissolution proceeding.

The respondent's conduct was, of course, improper, but we agree with the hearing and review boards that suspending the respondent from the practice of law would serve neither the public's nor the profession's interests. While we do not believe it necessary to deprive the respondent of his livelihood by suspending him, his misconduct is grave enough to warrant censure rather than the reprimand recommended by both the hearing and review boards.

*Respondent censured.*