No. 99,467

In the Matter of TROY L. DAUGHERTY, *Respondent.*
(180 P.3d 536)

Opinion filed March 28, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for petitioner.

*Troy L. Daugherty*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator alleging that the respondent, Troy L. Daugherty, violated the Kansas Rules of Professional Conduct. The hearing panel unanimously recommends that Daugherty be indefinitely suspended from the practice of law in the state of Kansas.

Troy L. Daugherty, an attorney admitted to the practice of law in Kansas in September 1990, is also admitted to the practice of law in the states of Illinois and Missouri. Respondent's last registration address with the Clerk of the Appellate Courts of Kansas is in Olathe, Kansas.

The complaint against respondent arises out of a final adjudication of a disciplinary action and sanctions in the state of Illinois, for which respondent received reciprocal attorney discipline and sanctions in the state of Missouri. The formal complaint here charged respondent with violating Kansas Rules of Professional Conduct (KRPC) 3.1 (2007 Kan. Ct. R. Annot. 500) (meritorious claims and contentions required), KRPC 3.3(a)(1) (2007 Kan. Ct. R. Annot. 508) (false statement of fact to a tribunal), KRPC 3.3(a)(4) (2006 Kan. Ct. R. Annot. 467) [now KRPC 3.3(a)(3) (2007 Kan. Ct. R. Annot. 508)] (offer evidence that the lawyer knows to be false), KRPC 3.4(b) (2007 Kan. Ct. R. Annot 514) (falsify evidence), KRPC 8.1(b) (2007 Kan. Ct. R. Annot. 553) (failing to respond to a demand for information from a disciplinary authority), and KRPC 8.4(b), (c), and (d) (2007 Kan. Ct. R. Annot. 559) (com-

mit a criminal act; engage in dishonesty, fraud, deceit or misrepresentation; and engage in conduct prejudicial to the administration of justice). When respondent did not file an answer to the formal complaint within 20 days as required by Supreme Court Rule 211(b) (2007 Kan. Ct. R. Annot. 304), a supplement to the formal complaint charged respondent with violating KRPC 8.1(b). Respondent eventually filed an answer to the formal complaint wherein he denied violating the KRPC and denied the findings of fact made by the Illinois Disciplinary Hearing Panel.

The Kansas Board for Discipline of Attorneys held a hearing on October 4, 2007. Respondent appeared pro se. At the hearing, the Disciplinary Administrator's Exhibits 1 through 8 were admitted.

## HEARING PANEL FINDINGS

The hearing panel found the following facts by clear and convincing evidence:

"2. On July 26, 2005, the Illinois Attorney Registration and Disciplinary Commission filed a Complaint against the Respondent. Thereafter, on September 22, 2005, the Respondent filed an Answer to the Complaint.

"3. On September 2006, the Illinois Attorney Registration and Disciplinary Commission held a hearing before a Hearing Panel. Thereafter, on January 3, 2007, the Hearing Panel issued its Report and Recommendation. On March 19, 2007, the Supreme Court of Illinois approved and confirmed the Report and Recommendation of the Hearing Board. As a result, the Court suspended the Respondent's license to practice law in the State of Illinois for one year. Additionally, the Illinois Supreme Court ordered that the Respondent's license to practice law will not be reinstated until the Respondent satisfies his restitution obligation with the Morton Community Bank.

"4. The Report and Recommendation of the Hearing Panel, affirmed and confirmed by the Illinois Supreme Court, provides as follows:

### 'INTRODUCTION

'The hearing in this matter was held on September 18, 2006, at the Chicago, Illinois offices of the Attorney Registration and Disciplinary Commission (ARDC) before the Panel of James A. Shapiro, Chair, Roma J. Stewart, and David A. Winter. Robert J. Verrando represented the Administrator of the ARDC. Respondent appeared in person and proceeded pro se.

### 'THE PLEADINGS

'On July 26, 2005, the Administrator filed a four-count Complaint against Respondent pursuant to Supreme Court Rule 753(b). The Complaint al-

leged that Respondent made misrepresentations in connection with a loan application, made false statements to a tribunal, committed perjury during a deposition, and failed to respond to the ARDC's requests for information.

'Respondent filed an Answer to the Complaint admitting some of the factual allegations, denying some of the factual allegations, and denying all allegations of misconduct.

### 'THE EVIDENCE

'The Administrator presented the testimony of two witnesses, called Respondent as an adverse witness, and tendered exhibits 1-13, which were admitted. Respondent testified on his own behalf.

### 'Count I
### 'Admitted Facts

'In April 2001, Respondent agreed to purchase a 1997 Lincoln Town Car from Thomas Fincham. Also in April, Respondent represented to Morton Community Bank (Morton Bank) that he intended to purchase the car, and requested a loan for the purchase. On May 21, 2001, Respondent executed a document entitled "Consumer Note, Disclosure and Security Agreement" in favor of Morton Bank. On May 4, 2001, Morton Bank sent Respondent a check in the amount of $15,000 made payable to Respondent. At no time did Respondent purchase the car, give Morton Bank a security interest in any property in exchange for the loan, or repay the loan proceeds to Morton Bank.

### 'Thomas Fincham

'Thomas Fincham is an attorney licensed to practice law in Missouri. Fincham and Respondent worked at the same Missouri law firm for approximately two years. In early 2001, Fincham was attempting to sell a 1997 Lincoln Town Car, and Respondent expressed interest in purchasing it. He showed Respondent the car sometime between March and May 2001. The car was not damaged, and Respondent agreed to buy it for $15,000. On May 3, 2001, at Respondent's request, Fincham sent Gene Hart at Morton Bank, via facsimile, a copy of the car's title, and stated that Respondent was interested in purchasing the car.

'Respondent never purchased the car and told Fincham that he could not obtain financing. The car had never been in an accident, and Fincham never told Respondent that it had been in one. However, when Fincham purchased the car, it was not new, and the salesman told him there had been some quarter panel damage that had been repaired. Fincham informed Respondent about the quarter panel damage before Respondent agreed to purchase the car. After Respondent initially saw the car, someone threw a rock through the window on the driver's side. Fincham told Respondent about the incident during a telephone conversation, and had the

window repaired. He did not recall Respondent coming to his office to discuss the window or to inspect the car.

'In February or March of 2002, Fincham received a telephone call from Hart asking him for the title to the car. He told Hart that he still owned the car, and had not sold it to Respondent. In February 2002, Fincham sold the car to someone else for $9,000. Fincham thought the price was low, but wanted to sell the car because he had purchased another one.

### 'Gene Hart

'In 2001, Gene Hart was the branch manager and loan officer at the Morton Bank. Respondent was a bank customer, and in early 2001 he told Hart he wanted to purchase a 1997 Lincoln Town Car, and requested a $15,000 auto loan. Hart called the seller of the car to get a copy of the title. Respondent did not complete a loan application because Respondent was an attorney, had several other loans with the bank, and had a good relationship with the bank. Respondent signed a "Consumer Note and Security Agreement" identifying the car, the amount of the loan, the payment schedule, and other terms of the loan. After receiving the signed note, the bank sent Respondent a check for $15,000. Hart made the check payable to Respondent, and relied on Respondent's integrity to send him the title.

'On February 8, 2002, Hart sent Respondent a letter explaining that Respondent had failed to make the last two payments on the loan. Hart also informed Respondent that he had contacted the seller of the car and learned that Respondent had not purchased it. Before sending the letter, Hart had attempted to discuss the late payments with Respondent by telephone but was unable to reach him, and Respondent failed to return Hart's voicemail messages. Before February 2002, Respondent had made three or four payments. After that time, Respondent made several additional payments. The balance of the loan is approximately $9,000. Eventually, Morton Bank sued Respondent and obtained a judgment against him. The bank spent approximately $18,000 in attorney's fees pursuing the matter.

'The consumer note would have given the bank a security interest in the Lincoln Town Car if the bank had received the title. The security interest would not have been transferable to another car without modifications to the loan. The bank made no modification to Respondent's loan. Because Respondent did not purchase the Lincoln Town Car, the loan was unsecured.

### 'Respondent

'Respondent signed the consumer note which accurately described Fincham's Lincoln Town Car. He also received and deposited the check for $15,000 from Morton Bank. He never told Hart that he failed to purchase the car.

'Respondent testified he intended to buy the car, but never agreed to buy it, and only told Fincham he was interested in buying it. However,

Respondent admitted he told Fincham he would pay $15,000 for the car, and applied for and obtained a loan to purchase the car. Initially, Fincham told Respondent the quarter panel had been damaged prior to his ownership, and he would have the car checked and tell Respondent if there was any frame damage. Before Fincham had the frame checked, the car was vandalized when the window was broken. Respondent decided not to buy the car after he saw the broken window, and determined that it was not worth $15,000. He used $10,000 of the loan proceeds to buy a different car, a Cirrus, and spent the remaining $5,000 on living expenses. He did not intend to defraud the bank, and thought he would repay the loan. He is still willing to repay the loan, but Morton Bank is demanding repayment of the loan and $18,000 in attorney's fees. Respondent is unable to pay that much in a lump sum, but is willing to make payments.

'Also in 2001, Respondent was going through a divorce and representing a client in a wrongful death action, both of which were consuming a large amount of his time. In the wrongful death action, Respondent believed he would obtain a large settlement, and spent his own money on expert opinions and other costs of the litigation. He later learned that his client lacked standing, and was unable to pursue the case. Between his divorce and the wrongful death case, Respondent was having financial difficulties, and he defaulted on the Morton Bank loan.

'Counts II and III
'Admitted Facts

'On April 25, 2002, Morton Bank filed a lawsuit against Respondent to recover the loan proceeds. On December 13, 2002, the circuit court entered a default judgment against Respondent. On October 9, 2003, Respondent filed a petition under chapter 7 of the Bankruptcy Code. On January 3, 2003, Morton Bank filed an adversary complaint with the bankruptcy court objecting to the dischargeability of his debt to the bank. Respondent filed an answer to the adversary complaint, admitting that the purpose of Morton Bank's loan was to finance the purchase of a car, but stating Fincham had "wrecked" the car before Respondent could purchase it, the value of the car was "substantially diminished," and repair of the car was uncertain due to "insurance entanglements." On December 17, 2004, Respondent gave sworn testimony at a deposition in connection with the adversary complaint.

'Respondent

'After Respondent defaulted on the loan, Morton Bank filed a lawsuit against Respondent. Respondent filed an answer to the complaint. On December 3, 2002, a judgment in the amount of $15,251.60 was entered against Respondent.

'On October 9, 2003, Respondent filed a bankruptcy petition, in which he listed the loan from Morton Bank. In the petition, Respondent also listed

several credit card debts, $79,000 owed to the Internal Revenue Service for employee withholding taxes, and $31,000 owed to his ex-wife as part of the divorce settlement. In January 2004, Morton Bank filed an adversary complaint against Respondent in the bankruptcy proceedings claiming that the debt to the bank was not dischargeable because Respondent had obtained the loan by deceit.

'In February 2004, Respondent filed an answer to the adversary complaint. Respondent admitted that the purpose of the loan was to purchase the Lincoln Town Car, and stated that he did not purchase the car because it was "wrecked by the then owner, its value substantially diminished, and the prospects of the repair of the vehicle in question due to insurance entanglements." Respondent explained that the words "then owner" refer to the person who owned the car before Fincham, and that the value was substantially diminished because Fincham sold the car for $9,000 instead of $15,000. In paragraph 11 of the answer, Respondent stated he did not own the car, and that Morton Bank knew he did not own it. He also stated he "utilized the funds to purchase an alternative vehicle in its stead." In paragraph 13, Respondent said he "never owned the collateral because of its wrecked condition."

'During his deposition in the adversary proceeding, Respondent was asked about the damage to the car, and he responded "somebody had T-boned the—this vehicle, the Lincoln Town Car." He also stated "the whole side of the vehicle was substantially damaged." Respondent acknowledged that he was wrong when he made these statements.

'During the deposition Respondent further explained, "the damage looked very substantial. It was hard for me to envision the vehicle looking and being in the same condition as it was when I was first going to buy it and then looking at it in the condition it was in." Respondent gave other incorrect answers at the deposition which he admitted were wrong and attributed to his lack of preparation for that testimony. For example, he repeatedly stated that Fincham was unsure if his or the other driver's insurance would pay for the damage to the car. Respondent was referring to the body damage that occurred before Fincham owned the car and not the broken window.

'When Respondent filed an answer to the adversary complaint and gave a deposition in the bankruptcy matter, he was confused about the condition of the car and believed his statements were accurate. He now acknowledges he was wrong when he said the car had been wrecked, but denies engaging in a four-year pattern of deceit.

'Count IV
'Admitted Facts

'On January 5, 2005, counsel for the Administrator sent Respondent a letter requesting that he provide information relating to the Morton Bank

loan. As of February 1, 2005, Respondent had not responded to the letter, and on that date, counsel for the Administrator sent a second letter requesting the same information. On April 5, 2005, Respondent had not responded to either letter, and counsel for the Administrator sent Respondent a subpoena duces tecum requiring his appearance and the production of documents at the Administrator's office on May 3, 2005. Respondent failed to appear on that date. As of July 19, 2005, the date of the Inquiry Panel meeting, Respondent had failed to provide the Administrator with the requested information.

### 'Respondent

'Respondent testified that he cooperated with the Administrator. He failed to respond to the subpoena because he did not have any of the documents requested by the Administrator. He sent the Administrator one letter along with his deposition from the adversary proceeding.

### 'Evidence Offered in Mitigation

'Respondent was licensed to practice law in 1985. He has performed pro bono legal services for [the] vast majority of his legal career, handling between one and three cases each year. Respondent acknowledged he made a mistake by failing to give the bank a security interest in the car he purchased, and he is sorry for making that mistake.

### 'Prior Discipline

'On January 30, 2004, the Supreme Court of the State of Kansas imposed a censure against Respondent. On January 14, 2005, the Illinois Supreme Court censured Respondent in a reciprocal discipline proceeding. The discipline was based on Respondent's misconduct in 2001 involving neglect of two divorce matters and failing to communicate with those clients. After the clients discharged Respondent, he continued to bill them for legal work, including for responding to their disciplinary complaints. The Kansas decision noted that Respondent's misconduct was aggravated by the harm he caused to his clients, the waste of court resources, and his failure to acknowledge his misconduct. *In re Daugherty*, 04 RC 1512, M.R. 19795 (January 14, 2005).

### 'FINDINGS OF FACT AND CONCLUSIONS OF LAW

'In attorney disciplinary proceedings, the Administrator must prove the alleged misconduct by clear and convincing evidence. Supreme Court Rule 753(c)(6); *In re Ingersoll*, 186 Ill. 2d 163, 168, 710 N.E.2d 390 (1999). It is well-settled that "clear and convincing evidence is a standard of proof which, while less than the criminal standard of proof beyond a reasonable doubt, is greater than the civil standard of preponderance of the evidence." Cleary and Graham, Handbook of Illinois Evidence, § 301.6 (6th ed. 1994). This standard of proof is one in which the risk of error is not equally allo-

cated; rather, this standard requires a high level of proof, both qualitatively and quantitatively, from the Administrator. *Santosky v. Kramer*, 455 U.S. 745, 764-66, 102 S. Ct. 1388 (1982); *In re Tepper*, 96 CH 543, M.R. 14596 (1998) (Review Bd. Dec. at 12). Suspicious circumstances are insufficient to warrant discipline. *In re Lane*, 127 Ill. 2d 90, 111, 535 N.E.2d 866 (1989).

'In this case, based on the evidence and testimony presented at the hearing, we find that the Administrator proved by clear and convincing evidence that Respondent engaged in all the misconduct alleged in the Complaint. Specifically, we find that Respondent: 1) advanced a claim the lawyer knows is unwarranted under existing law (Count II); 2) made a statement of material fact to a tribunal which the lawyer knew or reasonably should know is false (Count II); 3) offered evidence the lawyer knows to be false in appearing in a professional capacity before a tribunal (Count III); 4) participated in the creation of false evidence in appearing in a professional capacity before a tribunal (Count III); 5) failed to respond to a lawful demand for information form [*sic*] a disciplinary authority (Count IV); 6) engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (Counts I, II, III); 7) engaged in conduct which is prejudicial to the administration of justice (Counts I, II, III, IV); and 8) engaged in conduct which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute (Counts I, II, III, IV) in violation of Rules 1.2(f)(2), 3.3(a)(1), 3.3(a)(4), 3.3(a)(5), 8.1(a)(2), 8.4(a)(4), and 8.4(a)(5) of the Illinois Rules of Professional Conduct and Supreme Court Rule 770.

### 'Count I

'We find Respondent engaged in the misconduct alleged in Count I of the Complaint. **Respondent acted dishonestly when he obtained the loan from Morton Bank.** He agreed to purchase the Lincoln Town Car from Fincham. He received a $15,000 loan from Morton Bank to purchase the car. He signed the loan documents agreeing to give Morton Bank a security interest in the car as collateral for the loan. Based on his representations to the bank and signing the loan documents, the bank gave him a $15,000 loan. Respondent received the loan proceeds and deposited them into his personal account. But he never purchased the car in which the bank was supposed to have a security interest.

'Instead, he later used $5,000 for living expenses and $10,000 to buy a different car. Respondent never told Morton Bank that he failed to buy the Lincoln Town Car, or that he used part of the money to buy a different car. He also did not give the bank a security interest in the car he ultimately purchased. **There is no question that Respondent's conduct was dishonest and deceitful. He obtained the loan based on false statements and used the proceeds for other purposes without informing the**

**bank. Although not charged by the Administrator, we believe Respondent's conduct amounted to bank fraud.**

'Respondent argues he was not dishonest with Morton Bank because when he applied for and accepted the loan, he intended to purchase the car. According to Respondent, he decided not to purchase the car only after signing the loan documents. Even if Respondent's testimony were believable, which it is not, he would not avoid a finding of misconduct. Regardless of when he decided not to purchase the car, he still failed to inform the bank of his decision and used the loan proceeds for a purpose other than purchasing the Lincoln Town Car. Respondent's attempt to somehow justify his actions by claiming that he intended to purchase the car illustrates his complete lack of understanding of his misconduct.

'Respondent also attempts to minimize his wrongdoing by arguing that if he had informed the bank of his decision to purchase a different car, the bank could have simply modified the loan documents and there would have been no problems. This argument is illogical. Respondent testified he ultimately purchased a Cirrus for $10,000. If he had informed the bank of this purchase, the bank would have had to significantly modify the loan documents. The original loan was based on the $15,000 value of the Lincoln Town Car. Assuming the Cirrus was worth $10,000, the bank would not have lent Respondent $15,000. The loan involved the bank receiving a security interest in the car, and the bank would not have given Respondent a loan for more than the value of the car.

'Respondent's conduct was also prejudicial to the administration of justice, defeated the administration of justice, and brought the legal profession into disrepute. One of the reasons the bank was so cooperative with Respondent was because he was an attorney and had had other loans with the bank. See *In re Chandler*, 161 Ill. 2d 454, 641 N.E. 2d 473 (1994). **Respondent betrayed that trust and in so doing discredited the legal profession.**

'Counts II and III

'**We also find Respondent engaged in all the misconduct alleged in Counts II and III of the Complaint by making false statements in his answer to the adversary complaint and in a deposition during the bankruptcy proceedings.** Respondent failed to make payments on the Morton Bank loan. Morton Bank filed a complaint in the circuit court against Respondent, and in December 2002, obtained a default judgment against him. On October 9, 2003, Respondent filed a bankruptcy petition, which included the Morton Bank judgment. On January 3, 2004, Morton Bank filed an adversary complaint with the bankruptcy court objecting to the dischargeability of his debt to the bank. Respondent filed an answer to the adversary complaint, admitting the purpose of Morton Bank's loan was to finance the purchase of the car, but stating it was "wrecked by the then

owner, its value substantially diminished, and the prospects of the repair of the vehicle in question due to insurance entanglements. . ." Respondent also stated in the answer he "never owned the collateral because of its wrecked condition."

'In a subsequent deposition, Respondent was asked about the damage to the car, and he responded "somebody had T-boned the—this vehicle, the Lincoln Town Car." He also stated "the whole side of the vehicle was substantially damaged." He further explained, "the damage looked very substantial. It was hard for me to envision the vehicle looking and being in the same condition as it was when I was first going to buy it and then looking at it in the condition it was in." Respondent also repeatedly stated that Fincham was unsure if his or the other driver's insurance would pay for the damage to the car.

**Respondent's statements in the answer and deposition were false.** Fincham testified the car was not "wrecked" and there were no insurance entanglements. He also testified the only damage the car had was before he owned it. When Fincham bought the car, the salesman told him one of the quarter panels had been repaired. Fincham told Respondent about the repair, but there was no sign of damage when Respondent initially looked at the car. After Respondent saw the car, the driver's side window had been broken. Fincham told Respondent about that damage, had the window replaced, and there was no residual damage to the car. Fincham's testimony was clear and unequivocal, and we find it credible. *In re Smith*, 168 Ill. 2d 269, 283, 659 N.E.2d 896 (1995). During the disciplinary hearing, Respondent admitted that he was incorrect when he made contrary statements in his answer and deposition.

'Respondent claims he believed his statements were correct when he made them, but subsequently learned he was mistaken. **We find Respondent's testimony on this point not credible in the least. The Lincoln Town Car was never in an accident or suffered damage as Respondent described. There were no facts relating to the car even remotely similar to the ones propounded by him. He could not have been confused or mistaken. Instead, we find he fabricated a set of facts in an effort to defeat the bank's adversary complaint. Based on Respondent's testimony before us, and the facts of this case, we also believe Respondent knew these facts were false when he made them and intentionally lied during the bankruptcy proceedings.**

'Respondent further stated he failed to pay close attention to the loan transaction because he was distracted by his divorce and a wrongful death case he was handling. Although we understand the importance of these other matters, Respondent had an obligation to act properly regarding the loan transaction. His misconduct is not excused or explained by his involvement in the other matters. Furthermore, Respondent made the false statements in his answer and deposition long after those other matters con-

cluded. He therefore has no excuse for making blatantly false statements in a court document and under oath after the distracting matters had long concluded.

'Additionally, we find that the other matters explain, in part, the reason Respondent engaged in the misconduct. It is apparent that Respondent was having financial difficulties during the period of time he engaged in the misconduct. He admitted he was undergoing a divorce and his bankruptcy petition lists a $31,000 debt he owed to his wife. He also explained he had advanced large amount of money in the wrongful death action by taking cash advances on his credit cards. The case was ultimately dismissed, and he was unable to recover any of the money. **We believe Respondent lied to the bank and misused the loan proceeds because of these financial problems and he fabricated the story about the car being in a wreck in an attempt to justify his misconduct.**

'Based on these facts, we find Respondent advanced a claim he knew was unwarranted, made a statement of material fact to a tribunal he knew or reasonably should have known was false, offered evidence he knew to be false when appearing in his professional capacity before a tribunal, participated in the creation of false evidence, engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, engaged in conduct that is prejudicial to the administration of justice, and engaged in conduct that tends to defeat the administration of justice and bring the legal profession into disrepute. See *In re Ingersoll*, 186 Ill. 2d 165, 71 N.E.2d 390 (1999); *In re Cagle*, 03 SH 14, M. R. 20140 (September 26, 2005).

'Count IV

'We further find that Respondent engaged in all of the misconduct alleged in Count IV of the Complaint. On January 5, 2005, the Administrator sent Respondent a letter requesting he provide information relating to the Morton Bank loan. Respondent failed to respond to the letter. On February 1, 2005, the Administrator sent Respondent a second letter requesting the same information. Respondent failed to respond to either letter, and on April 5, 2005, the Administrator sent Respondent a subpoena duces tecum requiring his appearance and the production of documents at the Administrator's office on May 3, 2005. Respondent failed to appear on that date. As of July 19, 2005, the date of the Inquiry Panel meeting, Respondent had failed to provide the Administrator with the requested information. On July 18, 2005, the Administrator received a letter from Respondent denying misconduct and giving the Administrator a copy of his deposition from the adversary proceeding.

'Based on these facts, we find that Respondent failed to respond to a lawful demand for information from a disciplinary authority, engaged in conduct prejudicial to the administration of justice, and engaged in conduct

that tends to defeat the administration of justice and brings the legal profession into disrepute.

### 'RECOMMENDATION

'The purpose of the disciplinary system is to protect the public, maintain the integrity of the legal system and safeguard the administration of justice. See *In re Gorecki*, 208 Ill. 2d 350, 802 N.E.2d 1194 (2003); *In re Howard*, 188 Ill. 2d 423, 721 N.E.2d 1126 (1999). "The Rules of Professional Conduct recognize that the practice of law is a public trust and lawyers are the trustees of the judicial system." *In re Smith*, 168 Ill. 2d 269, 287, 659 N.E.2d 896 (1995). The objective of a disciplinary inquiry is not punishment, but to protect the public from incompetent or unscrupulous attorneys, maintain the integrity of the profession, and protect the administration of justice from reproach. See *In re Twohey*, 191 Ill. 2d 75, 727 N.E.2d 1028 (2000). In determining the appropriate sanction for an attorney's misconduct, the purpose of the disciplinary system and the facts surrounding the misconduct must be considered. See *In re Chernois*, 114 Ill. 2d 527, 502 N.E.2d 722 (1986).

'The discipline imposed on an attorney who has engaged in misconduct also depends on the aggravating and mitigating factors presented during that attorney's disciplinary proceedings. See *Gorecki*, 208 Ill. 2d at 360-61. In this case there is one mitigating factor and several aggravating factors.

'Respondent's misconduct is mitigated by the fact he performed pro bono legal work throughout his career. Respondent testified that since 1985 he has handled between one and three case [*sic*] per year on a pro bono basis. We will consider this evidence in mitigation.

'Respondent's misconduct is aggravated by his prior discipline. Generally, prior discipline is a serious factor that aggravates subsequent misconduct, and typically causes a more severe sanction than might otherwise be imposed. *In re Blank*, 145 Ill. 2d 534, 585 N.E. 105 (1991). The nature of the prior misconduct and the period of time between the prior misconduct and the current misconduct are important elements to consider when determining the weight to be given to this aggravating factor. See *In re Levin*, 101 Ill. 2d 535, 463 N.E.2d 715 (1984).

'In this case, Respondent's prior disciplinary action is an aggravating factor. On January 30, 2004, the Supreme Court of the State of Kansas imposed a censure against Respondent based on misconduct occurring in 2001 and involved neglect of two divorce matters and failing to communicate with those clients. After the clients discharged Respondent, he continued to bill them for legal work, including for responding to their disciplinary complaints. Respondent's misconduct was aggravated by the harm he caused his clients, the waste of court resources, and his failure to acknowledge his misconduct. On January 14, 2005, the Illinois Supreme Court censured Respondent in a reciprocal discipline proceeding.

'Although the nature of the misconduct in the prior and current disciplinary actions are substantially different, we must acknowledge that this is Respondent's second disciplinary action within a relatively short period of time and we consider his prior discipline an aggravating factor. Additionally, the prior and current misconduct involve similar aggravating facts.

'Respondent also aggravated his misconduct by failing to recognize the seriousness of his misconduct or express remorse for his actions. Failing to recognize the seriousness of misconduct and the lack of remorse are aggravating factors that must be considered when determining the appropriate sanction. *In re Lewis*, 138 Ill. 2d 310, 562 N.E.2d 198 (1990). Respondent acknowledged he made a mistake when he failed to give the bank a security interest in the car he purchased, and is sorry for making that mistake. We found Respondent's testimony on this point half-hearted and not convincing. Additionally, he failed to acknowledge the other misconduct, involving false statements during the adversary proceedings, or show remorse for it. Accordingly, we consider this a significant aggravating factor.

'**Respondent further aggravated his misconduct by failing to give truthful testimony. Respondent's testimony under oath to this Panel and in the bankruptcy deposition is nothing short of a bald-faced lie. It is perjury. In our view, Respondent committed bank fraud, and the only reason he has not been prosecuted for it is that the loss amount is insufficient to pique the interest of the FBI or U.S. Attorney's Office.**

'Respondent further aggravated his misconduct by causing harm to Morton Bank. Because of Respondent's misconduct the bank was forced to sue him to recover the loan and pursue further relief in bankruptcy court. The loan is still unpaid and there has been a substantial delay in any recovery. Although Respondent's misconduct is not related to any of his clients, it was committed for personal gain and caused financial harm and protracted inconvenience to the bank.

'The fraudulent act of an attorney acting in his own behalf in which he seeks personal gain, directly or indirectly, to the detriment of honesty, is no less reprehensible than when he acts on behalf of his client. It is our duty to supervise the professional conduct of lawyers practicing in Illinois, and the fulfillment of that duty necessarily requires inquiry into the private conduct of attorneys to the extent that such conduct relates to professional competence or the dignity of the legal profession. *In re Chandler*, 161 Ill. 2d 459, 473, 641 N.E.2d 473 (1994).

'Having considered the aggravating and lack of mitigating factors, we must now recommend the appropriate sanction. The Administrator recommends Respondent be suspended from the practice of law for one year and for us to at least consider a suspension until further order of the court, and cites several cases supporting this recommendation. See *In re Thebeau*, 111 Ill. 2d 251, 489 N.E.2d 877 (1986) (attorney suspended for one year

for notarizing a document without witnessing the signature and lying to the court); *In re Levinson*, 71 Ill. 2d 486, 376 N.E.2d 998 (1978) (attorney suspended for six months and until further order of the court after neglecting a case and failing to communicate with his client and demonstrating an inability to comply with his ethical obligations); *In re Nalick*, 02 SH 63, M.R. 19294 (May 27, 2004) (attorney suspended for one year after filing a bankruptcy petition containing false information); *In re Lamis*, 98 CH 63, M. R. 16112 (September 29, 1999) (attorney suspended for 17 months for altering an affidavit and lying to the court about it); *In re Passman*, 93 CH 573, M.R. 12249 (March 26, 1996) (attorney suspended for nine months for creating a false stipulation in an effort to dismiss a wage garnishment). Respondent suggests a reprimand is warranted.

'Respondent's suggestion that he receive a reprimand is positively laughable. The Administrator's request for a one-year suspension seems almost charitable. Consequently, we accept the Administrator's suggestion and recommend that Respondent be suspended for one year and until he makes restitution to the bank, including interest on the $15,000 loan and reasonable attorney's fees the bank incurred trying to collect it. Respondent is obviously a very bright lawyer. It is a shame to take him out of the legal community, but the public needs to be protected from his transgressions.

'In *Nalick*, the attorney represented clients in a bankruptcy proceeding. A fire had destroyed the clients' house and they had received numerous checks from their insurance company related to the fire. On the bankruptcy documents, Nalick failed to disclose the insurance proceeds the clients had received for loss of personal property. Additionally, at a creditor's meeting, the clients denied receiving any insurance proceeds, and Nalick did nothing to correct their denial. The clients directed Nalick to dismiss the bankruptcy petition, but Respondent failed to do so. After his clients' debts were discharged, the trustee filed a complaint to revoke the discharge based on the fraudulently concealed insurance proceeds. Nalick failed to respond to the complaint, the discharge was revoked, and sanctions were entered against him. In aggravation, Nalick had received a prior discipline for improperly handling client funds. He was suspended for one year.

'In *Thebeau*, the attorney handled a probate matter for three brothers who agreed that one of them would purchase their deceased mother's house through an installment contract. Thebeau prepared a contract showing the sale of the house was by a single payment, and filed that contract with the court. He believed the installment contract would keep the estate open for several years. Thebeau also notarized the signatures of the three brothers on the installment contract without witnessing them sign it. He also notarized a quitclaim deed, knowing that one of the brothers had signed all the brothers' names on it. In suspending Thebeau for one year, the Court characterized the misconduct as a deliberate course of conduct and a fraud

against the judicial system that was "professionally outrageous." *Thebeau*, 111 Ill. 2d at 255-56.

'In *In re Cagle*, 03 SH 14, M.R. 20140 (September 26, 2005), the attorney engaged in misconduct relating to three clients. In one bankruptcy matter, Cagle filed documents containing false information and failed to correct false statements made by her client. In a second matter, she failed to timely file a lawsuit, created a false file-stamped complaint, gave the complaint to her clients, and lied about the validity of the complaint to another attorney. In another matter, after a complaint she filed was dismissed, she took no action to refile the case, lied to her clients about the status of the case, and ignored inquiries from another attorney about the matter. Cagle also failed to timely respond to the Administrator's requests for information. In mitigation, she had no prior discipline, presented character witnesses, and cooperated before the Hearing Board. In aggravation, she failed to show remorse, and caused harm to her clients. She was suspended for nine months.

'After reviewing these cases, and considering Respondent's misconduct and the mitigating and aggravating factors, we recommend that Respondent be suspended from the practice of law for one year. Respondent's misconduct is similar to the misconduct in *Thebeau*, *Nalick* and *Cagle* where the attorneys made misrepresentations to courts to advance their cases. Also, Nalick and Respondent have few mitigating factors and similar aggravating factors including a prior discipline. Respondent's case is distinguishable from Cagle's, who had no prior discipline and received a shorter suspension.

'As the Administrator suggested, we have considered a suspension until further order of the court but decline to impose it. Such as [*sic*] designation is appropriate where the attorney has demonstrated an inability to conform to normal standards of the legal profession or has repeated prior misconduct for which he was disciplined. See *In re Houdek*, 113 Ill. 2d 323, 497 N.E.2d 1169 (1986); *In re Levin*, 101 Ill. 2d 535, 463 N.E.2d 715 (1984). Although Respondent has received a prior discipline, that case involved substantially different misconduct. We also do not believe that Respondent has demonstrated an inability to abide by his ethical obligations sufficient to require that the suspension remain in effect until further order of the court. None of the attorneys in *Thebeau*, *Nalick* or *Cagle* were suspended until further order of the court.

'Moreover, a suspension until further order of the court might create a disincentive for Respondent to make restitution to the bank. We believe Respondent should make the bank whole, and that he should have every incentive to do so. Consequently, we are recommending that Respondent have keys to his own reinstatement. We recommend that Respondent's suspension remain in effect until he makes full restitution to Morton Bank. Restitution should include repayment of the remaining loan principal with all applicable interest, and no more than $18,000 in attorney's fees.

'Therefore, in light of Respondent's misconduct, and considering the mitigating and aggravating factors, and relevant case law, we recommend that Respondent be suspended from the practice of law for one year and until he pays restitution to Morton Bank.'

"5. On May 29, 2007, the Missouri Supreme Court issued an order suspending the Respondent's license to practice law. The Missouri Supreme Court ordered that the Respondent's license be suspended for a period of one year and that his license shall not be reinstated until he has made restitution as required by the Illinois Supreme Court."

## HEARING PANEL CONCLUSIONS

The hearing panel then made the following conclusions of law:

"1. Kan. Sup. Ct. R. 202 provides that '[a] final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state.' Based upon the Respondent's stipulation to the admission of Disciplinary Administrator's Exhibits 1 through 8, the evidence presented at the hearing, including the Respondent's failure to provide any evidence to controvert the factual findings contained in the Disciplinary Administrator's Exhibits, and pursuant to Kan. Sup. Ct. R. 202, the Hearing Panel concludes that the Respondent engaged in misconduct.

"2. The Illinois Supreme Court concluded that the Respondent violated Illinois Rules of Professional Conduct 1.2(f)(2), 3.3(a)(1), 3.3(a)(4), 3.3(a)(5), 8.1(a)(2), 8.4(a)(4), and 8.4(a)(5).

"3. Illinois Rule of Professional Conduct 1.2(f)(2) provides that:

'In representation of a client, a lawyer shall not . . . advance a claim or defense the lawyer knows is unwarranted under existing law, except that the lawyer may advance such claim or defense it if can be supported by a good-faith argument for an extension, modification, or reversal of existing law.'

The rule in Kansas that is most similar is KRPC 3.1. It provides:

'A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.'

Pursuant to Kan. Sup. Ct. R. 202, the Hearing Panel concludes that the Respondent violated KRPC 3.1.

"4. The Illinois Supreme Court next concluded that the Respondent violated Illinois Rules of Professional Conduct 3.3(a)(1), 3.3(a)(4), and 3.3(a)(5). Those rules provide as follows:

'(a) In appearing in a professional capacity before a tribunal, a lawyer shall not:

(1) make a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false;

. . . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures;

(5) participate in the creation or preservation of evidence when the lawyer knows or reasonably should know the evidence is false.'

KRPC 3.3(a)(1) and KRPC 3.3(a)(4) are substantially similar to Illinois Rule of Professional Conduct 3.3(a)(1) and 3.3(a)(4). KRPC 3.3(a)(1) and KRPC 3.3(a)(4) [KRPC 3.3(a)(4) is now KRPC 3.3(a)(3). The FHR cites the amended version of KRPC 3.3(a)(3).] provide as follows:

'(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.'

KRPC 3.4(b) appears to be similar to Illinois Rule of Professional Conduct 3.3(a)(5). KRPC 3.4(b) provides:

'A lawyer shall not:

. . . .

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.'

Pursuant to Kan. Sup. Ct. R. 202, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1) and KRPC 3.3(a)(4).

"5. The Illinois Supreme Court also concluded that the Respondent violated KRPC [*sic*] 8.1(a)(2). That rule provides:

'(a) An applicant for admission to the bar or a lawyer in connection with a bar admission application or in connection with a lawyer disciplinary matter, shall not:

. . . .

(2) fail to disclose a fact necessary to correct a material misapprehension known by the person to have arisen in the matter, or fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by these Rules or by law.'

A similar Kansas rule can be found at KRPC 8.1(b). It provides:

'An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

Accordingly, pursuant to Kan. Sup. Ct. R. 202, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b).

"6. Finally, the Illinois Supreme Court concluded that the Respondent violated Rule 8.4(a)(4) and 8.4(a)(5). Those rules provide:

'(a) A lawyer shall not:

. . . .

(4) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(5) engage in conduct that is prejudicial to the administration of justice. In relation thereto, a lawyer shall not engage in adverse discriminatory treatment of litigants, jurors, witnesses, lawyers, and others, based on race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status. This subsection does not preclude legitimate advocacy when these or similar factors are issues in the proceeding.'

In Kansas, similar rules can by found at KRPC 8.4(c) and KRPC 8.4(d), as follows:

'It is professional misconduct for a lawyer to:

. . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.'

Pursuant to Kan. Sup. Ct. R. 202, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c) and KRPC 8.4(d)."

## HEARING PANEL RECOMMENDATIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the public and to the legal profession to maintain his personal integrity.

"*Mental State.* The Respondent knowingly and intentionally violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to the Morton Community Bank and to the legal profession.

"*Aggravating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. On January 30, 2004, the Kansas Supreme Court censured the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.16, and KRPC 8.4(g).

"Further, on March 19, 2007, the Illinois Supreme Court suspended the Respondent's license to practice law in Illinois for a period of one year for misconduct included in this case. The Illinois Supreme Court further ordered that the Respondent's license to practice law in that state will not be reinstated until he pays restitution to the Morton Community Bank. Finally, on May 29, 2007, the Missouri Supreme Court suspended the Respondent's license to practice law in Missouri for one year for misconduct included in the instant case. The Missouri Supreme Court also ordered the Respondent to make restitution to the Morton Community Bank before his license will be reinstated. The Missouri and Illinois disciplinary cases, however, arise from the same offenses that are the basis of the instant disciplinary case. As a result, the Hearing Panel has not considered these two disciplinary cases as an aggravating factor.

"Dishonest or Selfish Motive. The Respondent['s] misconduct was motivated by dishonesty and selfishness.

"Refusal to Acknowledge Wrongful Nature of Conduct. Throughout the Illinois disciplinary proceeding and continuing through the hearing held in the instant action, the Respondent has refused to acknowledge the wrongful nature of his conduct.

"Vulnerability of Victim. The Morton Community Bank was vulnerable to the Respondent's misconduct. The bank made the loan without the routine formalities including a loan application because the Respondent is an attorney. The bank relied to its detriment on the Respondent's integrity in making the loan.

"Substantial Experience in the Practice of Law. The Illinois Supreme Court admitted the Respondent to the practice of law in 1985. The Kansas Supreme Court admitted the Respondent to practice law in 1990. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than fifteen years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to make restitution to the Morton Community Bank.

"Mitigating Factors. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. In 2001, the Respondent

went through a bitter divorce. As a result of the divorce, the Respondent suffered financial difficulties. The Illinois Supreme Court stated:

> '. . . We believe Respondent lied to the bank and misused the loan proceeds because of these financial problems and he fabricated the story about the car being in a wreck in an attempt to justify his misconduct.'

Accordingly, the Hearing Panel concludes that the Respondent's personal financial difficulties led to the Respondent's misconduct.

"Imposition of Other Penalties or Sanctions. The Respondent's license to practice in Illinois and Missouri has been suspended.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

"Standard 6.11. Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

"Standard 6.12. Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes [an] adverse or potentially adverse effect on the legal proceeding."

## The panel recommended the following discipline:

"The Disciplinary Administrator recommended that the Hearing Panel impose the same discipline as imposed by the Illinois Supreme Court and the Missouri Supreme Court. The Respondent stated that he did not have an objection to the Disciplinary Administrator's recommendation.

"The Report and Recommendation adopted by the Illinois Supreme Court contains strong, descriptive language regarding the Respondent's misconduct. Specifically, the Illinois Supreme Court found that the Respondent's conduct was dishonest and deceitful. Also, it concluded that he obtained the loan 'based on false statements.' Further, the Illinois Court stated its belief that the Respondent's conduct 'amounted to bank fraud.' Finally, the Court concluded that the Respondent's testimony was not credible, that 'he fabricated a set of facts,' and that he 'intentionally lied during the bankruptcy proceedings.' Findings such as these warrant a severe sanction.

"Lawyers must be trustworthy. If an attorney provides false testimony and engages in fraudulent conduct, the attorney forfeits the privilege of practicing law. The Hearing Panel believes that it should give due deference to the decisions of our sister states in such matters; however, the Illinois discipline is apparently based upon the consideration of the discipline given for similar infractions to other lawyers in that state. Our Court has admonished us to consider each case sepa-

rately while being mindful of the standards. This Hearing Panel believes the standards, the Respondent's conduct, and his current opinion that he is not blameworthy for the infractions, warrant a different discipline than that given in Illinois and Missouri and recommended by the Disciplinary Administrator.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the State of Kansas. We are not certain that the effect of the recommended discipline will actually have a different result than the suspensions of our sister states with the added restitution requirement they have made, but we believe that the Respondent should be required to go through the reinstatement process before again practicing law in Kansas."

## DISCUSSION

In a disciplinary proceeding, we consider the evidence, the findings of the disciplinary panel, and the arguments of the parties to determine whether the respondent violated the KRPC and what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence).

The Respondent did not file any exceptions to the panel's final report. A hearing panel's final report is deemed admitted under Supreme Court Rule 212(c) and (d) (2007 Kan. Ct. R. Annot. 317) when a respondent fails to file exceptions. *In re Devkota*, 280 Kan. 650, 655, 123 P.3d 1289 (2005). We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. Further, we adopt the panel's findings of fact and conclusions of law.

With respect to the discipline to be imposed, we have carefully reviewed the record and the recommendation of the panel. Although we would normally impose reciprocal discipline, as the Disciplinary Administrator recommended in this case, we believe the sanctions imposed by the Illinois Supreme Court and the Missouri Supreme Court were exceedingly lenient in light of the Illinois Hearing Panel's opinion that Respondent committed bank fraud. Our view of bank fraud and the Respondent's conduct as found in this complaint warrants more severe discipline. A majority of this court concurs with the hearing panel's recommendation for Re-

spondent to be suspended indefinitely from the practice of law in the State of Kansas. A minority, however, would impose a harsher sanction, disbarment.

IT IS THEREFORE ORDERED that Respondent, Troy L. Daugherty, be and he is hereby disciplined by indefinite suspension from the practice of law in Kansas in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R. Annot. 261) for violation of KRPC 3.1; KRPC 3.3(a)(1); KRPC 3.3(a)(3); KRPC 3.4(b); KRPC 8.1(b); and KRPC 8.4(b), (c), and (d).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed to Respondent.