(No. 85127.—

*In re* CHASE INGERSOLL, Attorney, Respondent.

*Opinion filed March 18, 1999.*

Rosalyn B. Kaplan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Gregory A. Adamski and Katherine E. Walz, of Adamski & Conti, of Chicago, for respondent.

JUSTICE MILLER delivered the opinion of the court:

The present case consolidates two separate disciplinary actions brought by the Administrator of the Attorney Registration and Disciplinary Commission against the respondent, Chase Ingersoll. In the first proceeding, the Hearing Board found that respondent participated in filing a false document in court, commingled personal funds with client funds, and betrayed the confidences of a client. The Hearing Board recommended that respondent be suspended from the practice of law for three years and until further order of the court. The Review Board affirmed the Hearing Board's findings and recommended the same sanction. In the second proceeding, the Hearing Board found that respondent filed two false documents

in court. The Hearing Board believed that this misconduct alone would warrant a one-year suspension; considering the instances of misconduct committed by respondent in both matters, the Board recommended his disbarment. On the Administrator's motion, we ordered the second disciplinary matter transferred to this court and consolidated with the first one, bypassing the Review Board. Respondent has filed exceptions to the findings and recommendations in the two actions. The Administrator requests that respondent be disbarred. For the reasons stated below, we agree with the Administrator that disbarment is the appropriate sanction.

Respondent was graduated from law school in May 1994 and was admitted to the Illinois bar in November 1994. The Administrator filed a three-count complaint, designated 96 SH 358, against respondent on March 28, 1996. The Administrator later amended the complaint on June 11, 1996, by alleging an additional charge of misconduct. The Administrator initiated a separate proceeding against respondent, No. 97 SH 84, by filing a one-count complaint on August 21, 1997. Before this court, respondent challenges the sufficiency of the evidence of his misconduct on two of the charges in the initial proceeding; he does not now contest the charge of misconduct involved in the second proceeding. In addition, respondent disputes the Administrator's recommendation that he be disbarred for his misconduct. We will consider the relevant allegations, evidence, and findings in the sequence in which the misconduct was charged. We will then consider what sanction should be imposed on respondent.

The first charge of misconduct in 96 SH 358 involved respondent's representation of a client, Paul Flexner, in a slander suit by Flexner against his employer, Bradley University; Flexner was a professor in the Bradley art department. The charges concerned respondent's role in

the preparation and filing of a pauper's affidavit Flexner filed in circuit court in connection with the slander suit. The form, entitled "Application to Sue or Defend as a Poor Person," sought information on the applicant's financial standing. Question 4, regarding real and personal property, stated, "Applicant owns (A) no real estate except: (Location and Value)," and was followed by a blank line on which the applicant could provide information regarding his interests in real estate. Flexner's application did not contain any answer for question 4A. Flexner, however, owned a home in Morton, where he lived with his wife and three sons.

At the hearing, Flexner testified that he and respondent had prepared the form together. Flexner testified that he and respondent discussed the question regarding real estate, that he told respondent that he had about $30,000 to $35,000 in equity in his home, and that he owed about $88,000 on it. Flexner also said that he would have told someone inquiring about his residence that the bank owned the house and that he might own it after the passage of some 20 years. Flexner stated affirmatively, however, that respondent knew that Flexner owned a house and was making payments on it.

Respondent has provided two different explanations in these proceedings regarding his role in preparing and filing the pauper's affidavit. One version of events is found in a statement he sent the Administrator while the matter was under investigation. In a letter dated November 22, 1995, respondent said:

"I drafted the complaint for Flexner, but Flexner did not have the money to front the filing fees. I took his statements at face value and told him to fill [sic] go to the courthouse and file for pauper's status. He went and did that, returned the paperwork to me. I filed the case."

Respondent related a different recollection in his testimony before the Hearing Board—one that was at variance both with his earlier letter to the Administrator

and with Flexner's own testimony. According to respondent, he "may have" sent Flexner to the county courthouse to file the complaint, and Flexner "may have" come back and explained that he did not have enough money to pay the filing fee. Respondent said that he and Flexner then returned to the courthouse so that the client could submit a pauper's affidavit. Respondent filled out the affidavit, relying either on information he already knew about Flexner or on answers provided by Flexner to questions on the affidavit. Respondent then signed the affidavit as Flexner's lawyer. Regarding question 4A, real estate, respondent could not remember asking Flexner about this subject. Respondent stated that he did not then know that Flexner owned a home.

With respect to this portion of the complaint, the Hearing Board, in its written order, found that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Rule 8.4(a)(4) of the Rules of Professional Conduct (134 Ill. 2d R. 8.4(a)(4)); made a statement of material fact or law to a tribunal that he knew or reasonably should have known was false, in violation of Rule 3.3(a)(1) (134 Ill. 2d R. 3.3(a)(1)); offered evidence that he knew to be false and failed to take reasonable remedial measures to correct it, in violation of Rule 3.3(a)(4) (134 Ill. 2d R. 3.3(a)(4)); made a false statement of fact or law that he knew or reasonably should have known was false, in violation of Rule 4.1(a) (134 Ill. 2d R. 4.1(a)); and engaged in conduct that tended to defeat the administration of justice or bring the courts or the legal profession into disrepute, in violation of Rule 8.4(a)(5) and Supreme Court Rule 771 (134 Ill. 2d Rs. 8.4(a)(5), 771). The Review Board affirmed the Hearing Board's findings. Also, the Review Board declined to consider an affidavit signed by Flexner and submitted by respondent. The affidavit contradicted Flexner's own testimony at the hearing, and stated that

he did not discuss the exact value of the property with respondent. The Review Board noted that the affidavit was not part of the record developed before the hearing panel and therefore believed that consideration of the document would be improper. In addition, the Review Board noted the heavy presumption against recanted testimony in criminal proceedings and thought that a similar presumption should apply in these circumstances.

The Administrator must establish charges of lawyer misconduct by clear and convincing evidence. *In re Witt*, 145 Ill. 2d 380, 389 (1991); *In re Kitsos*, 127 Ill. 2d 1, 7-8 (1989); 134 Ill. 2d R. 753(c)(6). Respondent contends here that the Administrator failed to establish count I, relating to the representation of Flexner, and challenges the Hearing Board's finding that he took part in the submission of a false affidavit. Respondent disputes the finding below that he knew about Flexner's home, yet chose to advise Flexner to omit any reference to his interest in the property from the pauper's affidavit. Respondent contends that when the form was filled out he was ignorant of Flexner's interest in the residence.

Factual findings by the Hearing Board are entitled to great deference. *In re Rinella*, 175 Ill. 2d 504, 517 (1997). As this court explained in *In re Timpone*, 157 Ill. 2d 178, 196 (1993):

"This Court has noted that the Hearing Board is in a superior position to resolve factual disputes. The Hearing Board's findings regarding the credibility of witnesses, the resolution of conflicting testimony, and any other fact-finding judgments are entitled to great deference. [Citation.] This is due to the fact that the Hearing Board is able to observe the witnesses' demeanor and judge their credibility. [Citation.] Thus, the Hearing Board's factual determinations will generally not be disturbed unless they are against the manifest weight of the evidence."

In accordance with *Timpone*, we see no reason here to disturb the Board's conclusion that respondent was aware of Flexner's interest in the property and that re-

spondent falsely represented that Flexner did not own any real estate. Respondent provided the Administrator with two different accounts of his role in the preparation and filing of the false affidavit. In a letter to the Administrator while the matter was under investigation, respondent denied taking part in filling out the form. Later, however, in testimony before the Hearing Board, respondent admitted that he filled out the form. Even then, however, respondent denied having any knowledge of Flexner's ownership interest in a house. Respondent's testimony was contradicted on this point by Flexner, who maintained that respondent was aware of his residence and ownership interest in it. On this record, the Hearing Board was entitled to credit Flexner's testimony and to reject respondent's exculpatory testimony. As we have noted, the Hearing Board stands in a superior position to judge credibility and to make findings of fact. For these reasons, we conclude that the Administrator established by clear and convincing evidence the charges of misconduct found by the hearing panel.

Like the Review Board, we also decline to consider Flexner's subsequent affidavit, which contains assertions that contradict that witness' testimony before the Hearing Board. Respondent prepared and notarized the affidavit and submitted it several weeks after the Hearing Board had issued its report and decision in the first proceeding, 96 SH 358. As the Administrator observes, respondent did not seek to have the matter returned to the Hearing Board so that it could consider Flexner's affidavit, though respondent now insists that due process requires that he be given an opportunity to present this new evidence. In any event, we note that Flexner in his affidavit states that he did not discuss with respondent the exact value of the property. Even if this is true, Flexner still had an interest in the residence, and respondent knew or should have known of that.

We turn next to counts II and III of the administrator's amended complaint in 96 SH 358, which charge respondent with commingling. The respondent does not contest the Hearing Board's findings on these counts, and therefore only a brief recitation of the evidence is necessary here. Prior to the commencement of proceedings before the Hearing Board, the parties entered into a stipulation regarding the allegations contained in counts II and III. According to the stipulation, respondent maintained two client trust accounts at two different banks. On five occasions from July 13, 1995, to October 4, 1995, respondent deposited personal funds into the accounts. The amounts involved totaled less than $2,000. At the hearing, respondent testified that he understood that he had violated the disciplinary rules in the ways in which he maintained the accounts and handled the funds, but he insisted that his violations were merely technical and that his conduct was not unethical. The Hearing Board concluded in its written opinion that respondent failed to safeguard and hold client funds separate from his personal funds and in a separate and identifiable account, in violation of Rule 1.15(a) of the Rules of Professional Conduct (134 Ill. 2d R. 1.15(a)); failed to maintain complete records of client trust account funds, in violation of Rule 1.5(a) and Supreme Court Rule 769(2) (134 Ill. 2d Rs. 1.5(a), 769(2)); and engaged in conduct that tended to defeat the administration of justice or bring the courts or the legal profession into disrepute, in violation of Rule 8.4(a)(5) and Supreme Court Rule 771 (134 Ill. 2d Rs. 8.4(a)(5), 771). The Review Board affirmed the Hearing Board's findings on the two commingling counts. As we have noted, respondent does not contest these findings, and we conclude that the Administrator established these charges by clear and convincing evidence.

We next consider count IV of the amended complaint in 96 SH 358. This count concerns respondent's brief

representation of a defendant, Nikia Perry, in a criminal proceeding in Peoria County in May 1996. The charge of misconduct alleged that respondent improperly revealed client confidences without the client's knowledge or consent.

Extensive evidence on this charge of misconduct was presented to the Hearing Board, which heard testimony from Nikia Perry, Nikia's mother, Samethel Perry, a Peoria police detective, three reporters from the Peoria area, the respondent, and two other witnesses called on behalf of the respondent. We will provide a brief recitation of the relevant evidence.

Respondent first met with Perry on the evening of Saturday, May 4, 1996, while Perry was in custody. Perry had been charged with the murder of Marshall Dunnigan, Jr., the son of a Peoria police officer. Perry had confessed his role in the murder to police on May 2. Samethel Perry, Nikia's mother, testified that she called respondent at his home on Saturday evening and requested his assistance in seeing her son. Respondent agreed to meet her at the police station later that evening. Mrs. Perry testified that respondent was not there when she arrived and that she was later permitted to see her son. During the visit, she and her son were told that respondent was creating a disturbance in the lobby of the station and that she would have to cut her visit short. She then returned to the lobby.

Respondent testified that Mrs. Perry called him on Saturday and asked to hire him to represent her son. Respondent agreed to meet her at the police station. He later was allowed to see Nikia Perry. According to respondent, Perry asked him to take the case. Perry, in his testimony before the Hearing Board, denied hiring respondent as his lawyer. Both testified that at the beginning of their conversation, Perry sought to be assured that whatever he told respondent would remain confiden-

tial. In the course of the conversation, Perry told respondent that he had made a confession to authorities.

Respondent, in his testimony before the Hearing Board, stated that he and Perry agreed on a strategy that would help create sympathy for the defendant. According to respondent, their plan was to make public Perry's confession to the murder, with the attempt to mitigate the crime by showing that it was related to gang activity and that Perry had been ordered to commit the crime in retaliation for the death of a fellow gang member. Perry, in his own testimony before the Hearing Board, denied discussing that plan with respondent or agreeing to it.

The next day, Sunday, May 5, respondent contacted a reporter for a Peoria television station and told the reporter that Perry had given police a confession to the crime and that Perry had been ordered to commit the offense. According to the evidence, however, that Perry had confessed to the crime had not previously been made public. The television station then reported on the air that the story would appear on its evening news broadcast. Hearing the announcement at home, the Peoria County State's Attorney called one of the detectives handling the case. The detective told Perry about it; according to both the detective and Perry, Perry became quite upset, and he feared for the safety of his mother and girlfriend. After hearing about what respondent had told the media, Perry wrote a brief note discharging respondent from any further representation of him in the case. According to a detective, Perry said that respondent had urged him to go on television and make the State's Attorney and victim look bad; it appears that respondent was a candidate for State's Attorney at that time. The detective was going to give the note to respondent when he appeared at the station that evening for a previously scheduled meeting with Perry; respondent did not show up, however.

Other television stations in the Peoria area contacted respondent for further information about the case, and respondent told them what he had told the first station. The other stations carried similar reports on their own news programs later that night. The next day, Monday, May 6, respondent heard a discussion of the case on a Peoria radio station. Respondent called the station and was interviewed on the air about the case. In the interview, a transcript of which appears in the record in this case, respondent again stated that Perry had confessed his role in the murder, that the offense was related to gang activity, and that another gang member had ordered Perry to commit the murder.

Regarding respondent's representation of Perry, the Hearing Board concluded that respondent breached a fiduciary duty; used or revealed client confidences or secrets without the consent of the client after disclosure, in violation of Rule 1.6(a) of the Rules of Professional Conduct (134 Ill. 2d R. 1.6(a)); represented a client when the representation might be materially limited by the lawyer's own interests, in violation of Rule 1.7(b) (134 Ill. 2d R. 1.7(b)); engaged in conduct that was prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5)); and engaged in conduct that tended to defeat the administration of justice or bring the courts or the legal profession into disrepute, in violation of Supreme Court Rule 771 (134 Ill. 2d R. 771). The Review Board affirmed those findings.

Respondent challenges the Hearing Board's findings of misconduct, contending that they are not supported by the evidence in this case. We disagree. As previously noted, the Hearing Board's determinations of credibility are entitled to deference. In the present matter, the Hearing Board had before it conflicting accounts of whether respondent had discussed with Perry the plan to reveal Perry's role in the case in an attempt to portray Perry in

a sympathetic fashion. The Board rejected respondent's testimony. In further support of its findings, the Board also noted that even if respondent had discussed the planned strategy with Perry, respondent had failed to fully explain to Perry the possible ramifications of the plan, and therefore had not obtained Perry's informed consent. We agree. Even if respondent's testimony is accepted as true, it fails to demonstrate that respondent apprised Perry of the potential consequences of the strategy. Through this course of action, Perry gave up a challenge to the voluntariness of his confession without respondent's having investigated the circumstances surrounding the statement. For these reasons, we conclude that the Administrator established by clear and convincing evidence the charges of misconduct found by the hearing panel.

We also reject respondent's contentions that he was not allowed to fully question Perry about the case before the Hearing Board, or that the hearing should have been delayed for resolution of the criminal proceedings against Perry. Respondent did not object to Perry's testimony before the Board. In addition, respondent's counsel questioned Perry at length; the only question that Perry refused to answer concerned the voluntariness of the confession, and we do not believe that respondent was prejudiced in any manner by the witness' refusal to answer that question.

Finally, we note that respondent submitted an affidavit to the Review Board challenging Perry's testimony. The affidavit, which was prepared and notarized by respondent, was signed by one of Perry's cellmates in the Peoria County jail. The affiant stated that he had been told by Perry that Perry had authorized respondent to present Perry's defense to the media, including the claim that the murder had been ordered by another gang member. Even if we were to accept the contents of the af-

fidavit as true, this belated challenge to Perry's credibility would not alter our determination that respondent failed to warn Perry of the potential consequences of the strategy devised by respondent. As we have stated, the public relations campaign waged by respondent was fraught with problems. Public acknowledgment of Perry's role in the offense was potentially dangerous to his family and could be prejudicial to any later effort to suppress the confession.

On August 21, 1997, while the first disciplinary matter was pending before the Review Board, the Administrator initiated a second disciplinary action against respondent, 97 SH 84. This complaint alleged that the plaintiff filed false statements in proceedings involving a defamation action in which respondent was representing the plaintiff. Although respondent does not now contest the factual findings pertaining to these allegations, we will briefly summarize the evidence supporting the charges, for this additional misconduct is relevant to a determination of the sanction that respondent should receive.

In the underlying case, respondent was representing a person named Kevin Jones in a defamation action filed by Jones against Marcella Teplitz. Teplitz moved for summary judgment on August 5, 1996. On August 20, 1996, respondent filed a "Motion for Continuance and Additional Discovery Pursuant to Rule 191" in the case. The motion alleged, in pertinent part:

"3. Plaintiff has made demands on such parties for discovery but has received no compliance with requested affidavits of Captain Button, Chief Kelly and Reporter Bob Bouyea, which Plaintiff believes would inform the court that Defendant did in fact make the statements alleged in the complaint.

4. For hostile or other causes, such witnesses are unwilling to provide Plaintiff with Affidavits as to what was said to them by Defendant."

On September 30, 1996, respondent filed a similar motion, entitled "Motion for Additional Discovery Pursu-

ant to Rule 191," in the defamation action. The motion alleged, in pertinent part:

"3. Plaintiff has made demands on such parties for discovery but has received no compliance with requested affidavits of Jack Teplitz, Geraldine Mitchell and Camille Gibson, which Plaintiff believes would inform the court that Defendant did in fact make the statements alleged in the complaint.

4. For hostile or other causes, such witnesses are unwilling to provide Plaintiff with Affidavits as to what was said to them by Defendant."

Before the Hearing Board, the Administrator presented testimony from five of the persons named in the two motions filed by respondent. Captain Button, Chief Kelly, Jack Teplitz, Geraldine Mitchell, and Camille Gibson denied receiving any requests for affidavits, statements, or depositions in the period up to September 30, 1996, the date of the later motion.

After reviewing the testimony, the Hearing Board concluded that the evidence established that respondent committed misconduct by knowingly and deliberately filing two documents that contained material, false statements in the case. The Board found the following parts of the motions to be false: "Plaintiff has made demands for discovery" on Captain Button, Chief Kelly, Jack Teplitz, Geraldine Mitchell, and Camille Gibson; that "Plaintiff has *** received no compliance with requested affidavits" from those persons, and that "such witnesses are unwilling to provide Plaintiff with Affidavits." The Board observed that respondent had not made any requests on the persons, and therefore the statements in the two motions were false.

With respect to these charges, the Hearing Board concluded that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Rule 8.4(a)(4) of the Rules of Professional Conduct (134 Ill. 2d R. 8.4(a)(4)); made a statement of material fact to a tribunal that he knew or should have

known was false, in violation of Rule 3.3(a)(1) (134 Ill. 2d R. 3.3(a)(1)); engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5)); and engaged in conduct that tended to defeat the administration of justice or bring the courts or legal profession into disrepute, in violation of Supreme Court Rule 771 (134 Ill. 2d R. 771). The Board also concluded that the Administrator had failed to prove her allegation that respondent made a false statement of material fact or law to a third person. Regarding the appropriate sanction in the case, the Hearing Board noted the findings of misconduct in the earlier proceeding, 96 SH 358, and believed that respondent should now be disbarred if the other findings of misconduct were also considered. In the alternative, the Board stated that the appropriate sanction for this misconduct alone, without considering the other instances of misconduct, would be suspension of respondent for one year and until further order of the court. Before the matter could proceed before the Review Board, this court, on the motion of the Administrator, ordered the case consolidated with the earlier matter, 96 SH 358, and submitted together. As we have noted, respondent does not now contest the findings of misconduct entered with respect to the charges in 97 SH 84. We conclude that the Administrator established, by clear and convincing evidence, the charges found by the hearing panel.

We now consider what sanction is appropriate for respondent's misconduct. The Administrator seeks respondent's disbarment; respondent contends that a lesser sanction, such as censure, is proper. Attorney disciplinary proceedings are intended to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. *In re Lenz*, 108 Ill. 2d 445, 450-51 (1985); *In re Lamberis*, 93 Ill. 2d 222, 227 (1982). Predictability and fairness require

consistency in the sanctions imposed for similar acts of misconduct (*In re Timpone*, 157 Ill. 2d 178, 197 (1993); *In re Saladino*, 71 Ill. 2d 263, 275 (1978)), yet each case must ultimately be resolved on the facts and circumstances unique to it (*In re Smith*, 168 Ill. 2d 269, 296 (1995); *In re Joyce*, 133 Ill. 2d 16, 31 (1989)). Although the sanctions suggested by the Review and Hearing Boards provide us with guidance, their recommendations are only advisory (*In re D'Angelo*, 126 Ill. 2d 45, 52-53 (1988); *In re Hopper*, 85 Ill. 2d 318, 323 (1981)), for the final responsibility for imposing discipline upon an attorney rests with us (*In re Williams*, 111 Ill. 2d 105, 115 (1986)).

We agree with the Administrator that disbarment is the appropriate sanction in this case. As in other disciplinary matters in which this court has disbarred lawyers (see, *e.g.*, *In re Bell*, 147 Ill. 2d 15, 38-39 (1992); *In re Blank*, 145 Ill. 2d 534, 554-55 (1991); *In re Rotman*, 136 Ill. 2d 401, 417-23 (1990)), respondent here committed a number of serious violations of the Rules of Professional Conduct. Respondent was admitted to practice in November 1994, and the events involved in the two matters consolidated here occurred shortly after his admission to the bar, during a relatively brief legal career. Respondent's actions in preparing and filing client Flexner's pauper's affidavit reveal a disregard for ethical concerns. He was careless with client funds, as the charges of commingling in counts II and III of the first complaint reveal. Although the amounts involved in those charges were small, respondent committed repeated violations over a four-month period.

Respondent's misconduct in the Nikia Perry matter is particularly troubling. The record discloses that respondent felt free to reveal the confidences of a client, endangering the client and his family, without first obtaining the client's informed consent to that course of

conduct. Before the Hearing Board, respondent explained that he had hoped to build a reservoir of public sympathy for Perry. Even if that was respondent's motivation, it is apparent that respondent embarked on that risky course without first considering a number of other relevant matters, such as the defendant's interest in seeking suppression of the statement, the potential danger posed to the defendant and his family by the public revelations involved in the strategy, and respondent's own need for further investigation of the case.

We also have before us respondent's misconduct in 97 SH 84, involving respondent's filing of false motions for discovery sanctions. This again shows that respondent was willing to submit false statements to a court of law, apparently in the hopes of forestalling a motion for summary judgment.

Finally, we note the character evidence presented by the parties to the Hearing Board. Judge Glenn Collier of the circuit court of Peoria County appeared on behalf of the Administrator at both proceedings. Judge Collier testified that respondent has a poor reputation for veracity in the Peoria County area. Two character witnesses called by respondent, Tina Marie Bootz and her husband, Mark Bootz, provided testimony favorable to respondent in the first proceeding.

An attorney's lack of cooperation with the disciplinary process is also relevant to the determination of an appropriate sanction. *In re Smith*, 168 Ill. 2d 269, 296 (1995); *In re Samuels*, 126 Ill. 2d 509, 531 (1989). In the present case, respondent's conduct on several occasions exceeded the bounds of zealous advocacy and instead seemed designed to obstruct, delay, and hinder the proceedings. Shortly after the complaint was filed in the second matter, 97 SH 84, respondent sought to disqualify the Springfield members of the Administrator's office, contending that they were prejudiced against him, and to

have the matter transferred to the Chicago office. Later, respondent appeared at the second hearing in the company of a camera operator for a cable access channel; respondent stated that he had no objection to videotaping the proceedings for later broadcast. After the panel sustained the Administrator's objection to the videotaping, respondent demanded a jury trial. When that request was denied, respondent sought to engage in a *voir dire* examination of the three members of the hearing panel. Respondent later submitted a list of more than 60 questions that he wished to ask the panel; these ranged from inquiries about their religious affiliations and income levels to who had ordered and paid for their lunches. In addition, we note that respondent's *pro se* cross-examination of Judge Collier in the second proceeding before the hearing panel was disrespectful and insulting.

Respondent stated in his brief before this court that he planned to cease practicing law effective July 13, 1998, and that he does not intend to practice law in the future. In support of his request for a more lenient sanction, such as censure, respondent notes that this court has previously imposed lesser sanctions because of a lawyer's inexperience (*In re Betts*, 109 Ill. 2d 154, 177 (1985)) or decision to cease practicing law after the commission of misconduct (*In re Thebeau*, 111 Ill. 2d 251, 256 (1986)). Respondent maintains that the same mitigating elements are present in this case and similarly compel the selection of a more lenient sanction. We do not agree. The totality of the misconduct in the cases cited was neither as extensive nor as egregious as that involved here. The lawyer in *Betts* engaged in fraudulent conduct in a conservatorship proceeding; the lawyer in *Thebeau* committed fraud and deceit in the probating of an estate. Respondent's relative inexperience and stated intention to quit the practice of law do not alter our determination of the appropriate sanction for his substantial record of misconduct.

For the reasons stated, respondent is ordered disbarred.

*Respondent disbarred.*