SIXTH DIVISION
December 12, 2008

Nos. 1-07-0135 & 1-07-2142, Cons.

| | |
|---|---|
| *In re* MARRIAGE OF KAREN F. EBERHARDT, | ) Appeal from the |
| | ) Circuit Court of Cook County |
| Petitioner-Appellee, | ) |
| | ) No. 02 D 10429 |
| and | ) |
| | ) Honorables |
| STEPHEN E. EBERHARDT, | ) Mark Joseph Lopez and |
| | ) Martin Moltz, |
| Respondent-Appellant. | ) Judges Presiding. |

JUSTICE CAHILL delivered the opinion of the court:

Respondent Stephen E. Eberhardt appeals the trial court's denial of his postjudgment motions following the dissolution of his marriage to petitioner Karen F. Eberhardt.  He argues the trial court erred in: (1) denying his motion to modify child support by "double counting" his withdrawals from individual retirement accounts (IRAs) he received in the property settlement; (2) denying his motion for sanctions; (3) ordering him to pay part of Karen's attorney fees; and (4) denying his claimed exemptions to garnishment.  We affirm in part, reverse in part and remand for a hearing on attorney fees.

The judgment of dissolution was entered in December 2005.  Karen and Stephen were married in 1979 and had three daughters, ages 20, 19 and 13, at the time of the judgment.  Karen was given primary custody of 13-year-old Susan.  Stephen was ordered to pay $982.58 per month

in child support based on 20% of his personal net income as a self-employed attorney. In the allocation of marital assets, Stephen received $154,349.28 from Karen as his share of the equity in the family home. Stephen also received three IRAs.

Two months later, Stephen filed a *pro se* motion to modify child support. The proceedings on this motion generated other contested rulings on sanctions, attorney fees and garnishment. As a result, two appeals have been consolidated and four overlapping matters are at issue. We will review each of these matters separately, beginning with Stephen's motion for modification of child support.

As a preliminary matter, we deny Karen's motion to strike Stephen's brief and to dismiss this appeal for noncompliance with Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)). This rule requires an appellant's brief to contain "facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record." 210 Ill. 2d R. 341(h)(6). It is within our discretion to consider an appeal despite minimal citation to the record in the appellant's statement of facts. Silny v. Lorens, 73 Ill. App. 3d 638, 392 N.E.2d 267 (1979). Stephen's brief is sufficient for review.

Stephen filed a motion to modify child support on February 23, 2006. He reported a substantial change in circumstances because he had $0 income in the first two months of 2006 and he expected his annual personal income to be substantially less than in 2005. He attached a financial disclosure statement, showing a balance of $71,249.63 in a "house & IRA proceeds account." Karen, who was represented by her brother, attorney Robert H. Farley, Jr., responded. Farley argued Stephen was not entitled to a modification because he had withdrawn the IRA

funds he received in the property settlement and such proceeds must be counted as "income" for calculating child support under In re Marriage of Lindman, 356 Ill. App. 3d 462, 824 N.E.2d 1219 (2005).

Farley also filed a petition for rule to show cause as to why Stephen should not be held in contempt for violating the terms of the dissolution. The allegations were that Stephen: (1) failed to pay child support and health insurance; (2) failed to pay Susan's high school tuition; (3) spent thousands of dollars on White Sox tickets and had $71,000 in a bank account and a $100,000 line of credit while failing to meet his support obligations; (4) failed to pay the college expenses of the couple's two older daughters; (5) failed to pay for Susan's extracurricular activities and uncovered medical expenses; and (6) failed to pay Susan's remaining grammar school expenses. Farley later withdrew the last two claims.

The trial court held a combined hearing on the petition for rule to show cause and on Stephen's motion to modify child support on November 2, 2006. Stephen first objected to exhibits attached to a memorandum Farley had submitted *ex parte* to the trial judge just days before the hearing. The judge said he had not read Farley's memo or looked at the exhibits and admonished both parties to "follow the rules."

Stephen, Karen and two of their three daughters testified at the hearing. Stephen admitted withdrawing IRA funds of $8,065.24 on January 31, 2006, and $5,759.30 on February 17, 2006. He admitted a financial disclosure statement he submitted on October 1, 2006, did not reflect these withdrawals.

The trial court denied Stephen's motion to reduce child support, finding no substantial

3

change in circumstances. The court also found Stephen in contempt, stating:

"I truly don't understand a record like this where, Mr. Eberhardt, you tell me you get $154,000 in a buyout. You get IRA distributions, which clearly are income. Had you explained a little bit better in terms of your clear and convincing burden that you [paid] debts with these [distributions] and you submitted cancelled checks, receipts for payments, to give me some reason to believe your representations, then maybe you might have something there ***. *** [Y]ou just represent these things to me; and you expect me just to accept [them] at face value. That is not what a clear and convincing standard is. It is a higher burden; and if you gave me some documentation to support it, I might be inclined to go along with you. *** [It] doesn't sound to me like somebody who is trying to be straightforward with this Court. It sounds like somebody who is trying to be evasive and not give me the full picture.

*** [Y]ou are a private practitioner since [1992] to the time of judgment; and then all of a sudden, after judgment; things go down hill; and you expect me just to accept the fact that business is bad or things are tough out there[?] I understand things *** go up and down. *** [B]ut to go straight into the tubes after judgment, that doesn't sound very reasonable to expect this Court to believe you. *** I don't. *** [I]t is a very poor record for me to grant you the relief that you have been seeking[,] counsel."

Stephen filed a motion to reconsider, arguing that the trial court erred by double counting

4

his IRA withdrawals and misapplied the law on double counting in <u>In re Marriage of Lindman</u>, 356 Ill. App. 3d 462. After a hearing, the trial court denied Stephen's motion for reconsideration:

"I do not believe there is anything inappropriate in considering IRA distributions as being income. I think that your concern about not considering the double counting issue is misguided because that was a small part of the reason for my findings. My concern with your failure to meet your burden was what I perceived as a lack of credibility on your part and your testimony, the lack of support of documentation to support your testimony, the failure to include—even by your own acknowledgment—the IRA on your [financial disclosure affidavit required under the Cook County circuit court rules].

　　　***

Further, I have a record where your monies seem to be spent on things other than your court-ordered obligation. *** [I]f you pay your support[,] everything else is your business; but you are coming to this court asking me to reduce your court-ordered obligation ***. And it's your burden to show me that change, one, it occurred, and two, it warrants a modification of your court-ordered obligation, and you failed in that regard."

The hearing continued after this ruling with arguments on unresolved motions and petitions, including requests for sanctions and attorney fees. These matters are addressed individually later in this opinion. The court also purged its finding of contempt after Farley reported Stephen had fulfilled his child support obligations.

The modification of child support is governed by section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 2006)). A parent's child-support obligation may be modified if he or she can show a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2006). The party seeking relief has the burden of showing a change in circumstances substantial enough to warrant a change in support. In re Marriage of Singleteary, 293 Ill. App. 3d 25, 34, 687 N.E.2d 1080 (1997). A change in income is one of the grounds for modification. In re Marriage of Carpenter, 286 Ill. App. 3d 969, 974, 677 N.E.2d 463 (1997). "Net income" is defined in section 505(a)(3) of the Act as "the total of all income from all sources." 750 ILCS 5/505(a)(3) (West 2006). "[T]he General Assembly has adopted an expansive definition of what constitutes 'net income.' " In re Marriage of Rogers, 213 Ill. 2d 129, 136, 820 N.E.2d 386 (2004). "[T]he relevant focus under section 505 [of the Act (750 ILCS 5/505 (West 2006))] is the parent's economic situation at the time the child support calculations are made by the court." In re Marriage of Rogers, 213 Ill. 2d at 138.

Stephen argues that the question of whether the trial court erred in counting his IRA withdrawals as income under the Act is a question of law, subject to *de novo* review, citing In re Marriage of Crook, 211 Ill. 2d 437, 442, 813 N.E.2d 198 (2004) (when there are no factual or credibility issues, questions of law are reviewed *de novo*). Statutory interpretation is also subject to *de novo* review. In re Marriage of Rogers, 213 Ill. 2d at 136-37.

In Lindman, this court conducted *de novo* review of the legal question posed here and concluded: "regardless of the property settlement, the disbursements [the] petitioner receives from his retirement account are income at the time they are paid." In re Marriage of Lindman, 356 Ill.

App. 3d at 469. But see In re Marriage of O'Daniel, 382 Ill. App. 3d 845, 850, 889 N.E.2d 254 (2008) (Lindman should not be read to mean that "*any* IRA disbursement would constitute income" (emphasis added)).

The Lindman court relied on In re Marriage of Klomps, 286 Ill. App. 3d 710, 676 N.E.2d 686 (1997). There we said: "If we were to allow retirement income to be excluded from net income when setting child support merely because those benefits, prior to their receipt, were used to determine an equitable distribution of the parties' marital property, we would be adding provisions to the Act that do not exist. We will not twist the clear meaning of the Act to invent an otherwise nonexistent rule that would be contrary to the purpose of making 'reasonable provision for spouses and minor children during and after litigation.' [Citation.]" In re Marriage of Klomps, 286 Ill. App. 3d at 716-17.

Under Lindman and Klomps, Stephen's question of whether, as a matter of law, the IRAs awarded to him in the property settlement can be regarded as income when liquidated must be answered in the affirmative. To avoid this result, Stephen directs us to a section added by the court in Lindman, discussing "a potential 'double counting' issue" that the petitioner there did not raise. In re Marriage of Lindman, 356 Ill. App. 3d at 470. The court described a hypothetical situation where improper double counting could occur if the earnings deposited in an IRA were counted as income when they were earned and again five years later when withdrawn. In re Marriage of Lindman, 356 Ill. App. 3d at 470. "To avoid double counting in this situation, the court may have to determine what percentage of the IRA money was considered in the year one net income calculation and discount the year five net income calculation accordingly." In re

7

1-07-0135 & 1-07-2142, Cons.

<u>Marriage of Lindman</u>, 356 Ill. App. 3d at 470. This is not the theory Stephen advances here.

Stephen's exact argument, that improper double counting occurs when IRAs awarded in a property settlement are liquidated and viewed as income, was recently considered and rejected in a Massachusetts appellate court opinion, <u>Croak v. Bergeron</u>, 67 Mass. App. Ct. 750, 753, 856 N.E.2d 900, 903 (2006). Although neither party has cited this case and foreign judgments have no effect in Illinois, the case is instructive.

In <u>Croak</u>, as here, the father argued "it was improper 'double-counting' to treat funds prematurely withdrawn from his IRAs as income for child support purposes as those funds had already been divided as part of the marital estate upon divorce." <u>Croak</u>, 67 Mass. App. Ct. at 753, 856 N.E.2d at 903. The court disagreed: "[T]he [trial] judge found that [the father] had a pattern of nondisclosure and evasion with respect to his finances." <u>Croak</u>, 67 Mass. App. Ct. at 755, 856 N.E.2d at 905. "[W]e perceive nothing in [the father's] argument that the judge engaged in improper 'double counting' (or 'double dipping') by treating his IRA funds 'as both assets in the property division and later, as income when [the father] liquidated them,' that would cause us to disturb the judgment." <u>Croak</u>, 67 Mass. App. Ct. at 758, 856 N.E.2d at 907. " 'Commentators use the phrase "double dipping" to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations.' " <u>Croak</u>, 67 Mass. App. Ct. at 758-59, 856 N.E.2d at 907, quoting <u>Champion v. Champion</u>, 54 Mass. App. Ct. 215, 219, 764 N.E.2d 898, 902 (2002). The court found that nothing in the state's supreme court rulings "prohibits double dipping as matter of law." <u>Croak</u>, 67 Mass. App. Ct. at 759, 856 N.E.2d at

8

907. "Rather, *** the judge must look to the equities of the situation to make her determination." Croak, 67 Mass. App. Ct. at 759, 856 N.E.2d at 907. "Even were we to assume that the concept of double counting has application in the present case, and were to assume further that the judge engaged in some double counting, we would conclude that, in the circumstances presented here *** , a failure to consider the IRAs [as income] would have resulted in an inequity." Croak, 67 Mass. App. Ct. at 759, 856 N.E.2d at 907.

The outcomes in Croak, Lindman and Klomps ultimately turned on the facts of the case. We review the trial court's factual findings in ruling on a motion to modify child support under the abuse of discretion standard. People ex rel. Hines v. Hines, 236 Ill. App. 3d 739, 744, 602 N.E.2d 902 (1992). An abuse of discretion occurs when no reasonable person would take the trial court's view. Dawdy v. Union Pacific R.R. Co., 207 Ill. 2d 167, 177, 797 N.E.2d 687 (2003). We will allow the trial court's factual conclusions to stand unless they are against the manifest weight of the evidence. In re Marriage of Heldebrandt, 301 Ill. App. 3d 265, 267, 703 N.E.2d 939 (1998). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." Bazydlo v. Volant, 164 Ill. 2d 207, 215, 647 N.E.2d 273 (1995).

Here, as in Croak, the court found Stephen to be evasive and less than straightforward about his finances. It found a pattern of nondisclosure. The court did not believe Stephen's story of a sudden downturn in business. The court addressed the double counting issue, calling it a misguided argument on Stephen's part because the IRA income was less of an influence on the court's decision than the perception that Stephen's testimony was not credible. The court also

noted that Stephen apparently spent money for his own benefit rather than meeting his court-ordered support obligations to his children. We conclude the trial court did not abuse its discretion in denying Stephen's motion for modification of child support, nor were its findings against the manifest weight of the evidence.

We turn to the issue of sanctions. During the pendency of Stephen's motion for modification of child support, the parties disputed several procedural issues, including some related to discovery. It is from these disputes that Stephen's motions for sanctions arose.

In April 2006, Farley submitted interrogatories and requests for documents. Stephen moved to strike the interrogatories and impose sanctions, alleging Farley violated Supreme Court Rule 213(b) (210 Ill. 2d R. 213(b)) (the attorney directing interrogatories must restrict them to pertinent subject matter and avoid unnecessary detail and expense to the answering party). At a status hearing, Stephen suggested that the parties have a conference with the court to resolve their discovery disagreements. Farley declined, stating he planned to file within 10 days a response to Stephen's motion to strike as well as a motion on Karen's behalf to compel Stephen's compliance with discovery. Stephen asked for 21 days to respond to Farley's filings, but the court allowed only 10 days. The trial court went on to deny Stephen's motion for sanctions but it did not compel his compliance with discovery. Instead, the court ordered Stephen to produce only financial documents for the period of January 1, 2006, to June 30, 2006.

On December 12, 2006, Stephen filed another motion for sanctions. Stephen alleged Karen and Farley: (1) filed improper interrogatories as proven by the fact that the trial court did not order Stephen to answer them, instead asking for six months of financial documents; (2)

falsely alleged that Stephen had failed to pay certain expenses incurred by Susan for which he was not responsible under the dissolution to harass him, increase litigation costs and deceive the court; (3) refused to cooperate with Stephen's attempts to expedite the litigation and harassed him by requiring him to give a deposition; and (4) misrepresented to the court the law on double counting. The court denied the motion and Stephen appeals.

We review a ruling on a motion for sanctions under the abuse of discretion standard. In re Marriage of Baumgartner, 384 Ill. App. 3d 39, 64, 890 N.E.2d 1256 (2008). The trial court is in the best position to decide how procedural rules should be applied and so its decisions are entitled to deference. In re Marriage of Baumgartner, 384 Ill. App. 3d at 64. We consider whether the decision was "informed, based on valid reasons, and followed logically from the circumstances of the case." Burrows v. Pick, 306 Ill. App. 3d 1048, 1051, 715 N.E.2d 792 (1999).

Stephen first argues that Farley violated Supreme Court Rule 213(b) (210 Ill. 2d R. 213(b)) by submitting interrogatories intended to harass him and lengthen the litigation. He argues that the trial court gave a "clear indication" that it found Farley's interrogatories improper when it failed to order Stephen to answer them and directed him to provide only financial information from January to June 2006. Rule 213(b) requires the attorney serving interrogatories to avoid unnecessary burdens or expenses on the answering party. 210 Ill. 2d R. 213(b). Rule 213(c) quantifies the requirement: "a party shall not serve more than 30 interrogatories." 210 Ill. 2d R. 213(c). Here, the record shows that Farley's first set of interrogatories contained 13 questions and a second set contained 4 questions. This is well within the 30-interrogatory limit stated in the rule. The trial court did not abuse its discretion in denying Stephen's request for

11

sanctions under Rule 213(b) (210 Ill. 2d R. 213(b)).

Stephen next argues that Farley should have been sanctioned for signing pleadings that contained false statements about the provisions in the dissolution order on reimbursements for Susan's extracurricular activities. He claims the dissolution order specifically limited reimbursements to athletic activities, music lessons and dramatics classes, yet Farley requested reimbursement for dances, pizza parties and Mardi Gras activities. The record shows this request was withdrawn by Farley. Despite this withdrawal, Stephen maintains Farley violated Rule 8.4(a)(4) of the Rules of Professional Conduct (134 Ill. 2d R. 8.4(a)(4)) (an attorney shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation") and Supreme Court Rule 137 (155 Ill. 2d R. 137) (the signature of the attorney in a lawsuit certifies that the pleadings are "well grounded in fact" and "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").

It appears from the record that Farley realized a mistake had been made when he withdrew the paragraphs at issue. While it is true that sanctions are proper where a mistake could have been corrected but was not and the other party incurs costs as a result ( People v. Stefanski, 377 Ill. App. 3d 548, 552-53, 879 N.E.2d 1019 (2007)), the mistake here was corrected in a timely fashion and there is no evidence that Stephen incurred costs.

Stephen next argues that sanctions should have been imposed under Rules 3.2 and 3.3(a)(11) of the Rules of Professional Conduct (134 Ill. 2d Rs. 3.2, 3.3(a)(11)) because Karen and Farley refused Stephen's request to meet with the trial judge to resolve their discovery differences. Stephen claims their refusal was a means of forcing him to respond to a "rule to show

12

cause" and appear for an unnecessary deposition. Rule 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." 134 Ill. 2d R. 3.2. Rule 3.3(a)(11) provides that a lawyer shall not "refuse to accede to reasonable requests of opposing counsel that do not prejudice the rights of the client." 134 Ill. 2d R. 3.3(a)(11). A Rule 3.2 violation must be proven by clear and convincing evidence (In re Smith, 168 Ill. 2d 269, 282-83, 659 N.E.2d 896 (1995)), as must a Rule 3.3 violation (In re Ingersoll, 186 Ill. 2d 163, 177, 710 N.E.2d 390 (1999)).

Here, Farley declined to participate in an impromptu conference on discovery proposed by Stephen but agreed to file pleadings on the issues within 10 days. Stephen then asked for twice as much time, 21 days, to respond to the pleadings Farley would file. Instead, the trial court imposed on Stephen the same 10-day deadline given to Farley. Farley's preference for addressing the discovery issues in written pleadings rather than a hastily-assembled conference is not clear and convincing evidence that Farley violated Rules 3.2 and 3.3. In fact, it appears from the record that both sides contributed to delays in discovery and other procedural matters. The trial court did not err in refusing to sanction Farley for delays.

Stephen next argues his motion for sanctions should have been granted because Farley violated Rule 3.3(a)(3) of the Rules of Professional Conduct (134 Ill. 2d R. 3.3(a)(3)) by filing an unsolicited memorandum and misrepresenting the case law on double counting on the eve of the hearing on Stephen's motion for modification. Rule 3.3(a)(3) requires a lawyer to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." 132 Ill. 2d R. 3.3(a)(3).

13

The record shows that the trial judge had not read the memorandum or exhibits at issue, but even if he had, this argument is waived. At the hearing on the motion to modify child support, Stephen objected to the exhibits attached to the memorandum, but he did not challenge the content of the memorandum or its representation of case law. Nor did Stephen raise these issues when the trial court held a hearing on his petition for sanctions after its ruling on Stephen's motion to reconsider the denial of his petition for modification on December 19, 2006. The doctrine of waiver applies to arguments raised for the first time on appeal. Daniels v. Industrial Comm'n, 201 Ill. 2d 160, 182, 775 N.E.2d 936 (2002).

We turn to the issue of attorney fees. Farley filed a petition on Karen's behalf for attorney fees under section 508(b) of the Act (750 ILCS 5/508(b) (West 2006)). Both parties presented oral arguments on December 19, 2006, after the court's rulings on Stephen's motions to reconsider the denial of his petition for modification and for sanctions. Stephen asked for a separate evidentiary hearing where Farley would be required to testify about his fees and services. The trial court denied the request and ordered Stephen to pay $3,000 of Karen's attorney fees. The judge said he had considered the parties' arguments and the factors used by courts in assessing a petition for attorney fees. See, for example, Richardson v. Haddon, 375 Ill. App. 3d 312, 314-15, 873 N.E.2d 570 (2007) (the factors include "the nature of the case, the case's novelty and difficulty level, the skill and standing of the attorney, the degree of responsibility required, the usual and customary charges for similar work, and the connection between the litigation and the fees charged"). The judge said he also had reviewed Farley's hourly billing sheets and costs. Stephen argues on appeal that the court erred in refusing to hold a separate

14

1-07-0135 & 1-07-2142, Cons.

hearing.

"[W]here the allowance of attorney's fees is contested and a hearing is requested, the trial court should conduct a hearing on the question." Scott v. Scott, 72 Ill. App. 3d 117, 127, 389 N.E.2d 1271 (1979). It appears from the transcripts that the trial court regarded proceedings held on December 19, 2006, as a hearing on attorney fees. But because Stephen requested a separate hearing, he is entitled to receive one. We reverse the trial court's award of attorney fees and remand for a hearing on this issue.

Because Stephen's claims of exemptions to garnishment may remain at issue after the hearing, we will address them here. After the trial court awarded Karen $3,000 in attorney fees, Farley served a nonwage garnishment summons on First Midwest Bank (First Midwest), where Stephen had several accounts. The date of service was January 2, 2007. The next day, First Midwest advised Stephen that it was holding $200 from one account and $2,800 from another account to satisfy the nonwage garnishment.

Stephen filed a notice to claim exemptions from garnishment. He claimed $2,800 was exempt from garnishment under section 12-704 of the Code of Civil Procedure (Code) (735 ILCS 5/12-704 (West 2006)) (benefits and refunds payable by retirement funds are exempt from garnishment) or section 12-1006 of the Code (735 ILCS 5/12-1006) (a debtor's interest in a retirement plan is exempted from seizure for satisfaction of debts). In the alternative, he argued that the entire $3,000 was exempt under section 12-1001(b) of the Code (735 ILCS 5/12-1001(b) (West 2006)) (personal property owned by the debtor, including the debtor's equity interest "in any other property" is exempt from judgment).

15

1-07-0135 & 1-07-2142, Cons.

After a hearing, the trial court denied the exemptions, citing <u>Auto Owners Insurance v. Berkshire</u>, 225 Ill. App. 3d 695, 588 N.E.2d 1230 (1992) (a lump-sum distribution from a pension plan is not exempt from garnishment unless the recipient rolled over the funds into another qualified plan). It is undisputed that Stephen did not do so. Stephen filed a motion to reconsider, arguing that the court's order was unclear and that $9,000 in his business bank accounts could not be used to satisfy the garnishment because the funds were deposited after the date of service, January 2, 2007.

The trial court denied Stephen's motion to reconsider in a written memorandum opinion and order, concluding that First Midwest properly held $3,000 at the time of the garnishment summons and the lien that attached at that time remained in effect.

Stephen argues on appeal that he was entitled to exemptions under: (1) section 12-704 of the Code (735 ILCS 5/12-704 (West 2006)), exempting retirement benefits and refunds from garnishment; and (2) section 12-1001(b) of the Code (735 ILCS 5/12-1001(b) (West 2006)), exempting personal property including the debtor's equity interest up to $4,000. When, as here, a garnishment issue is contested and there was a trial on the issue, a reviewing court must determine whether the judgment was against the manifest weight of the evidence. <u>Buckner v. Causey</u>, 311 Ill. App. 3d 139, 142-43, 724 N.E.2d 95 (1999).

Section 12-704 of the Code provides: "Benefits and refunds payable by pension or retirement funds *** are exempt and are not subject to garnishment." 735 ILCS 5/12-704 (West 2006). When retirement funds are deposited in a checking account, they are exempt from garnishment only if they remain traceable as retirement benefits. <u>Berkshire</u>, 225 Ill. App. 3d at

16

701. Here, the evidence showed the distributions from Stephen's IRA accounts had been commingled with the proceeds from Karen's buy-out of his interest in the family home and that Stephen was unable to trace and differentiate the retirement funds. The trial court's denial of an exemption to garnishment under section 12-704 of the Code (735 ILCS 5/12-704 (West 2006)) was not against the manifest weight of the evidence.

Stephen argues that Berkshire is inapplicable because the court there specifically stated that nonwage garnishment, the issue here, was not at issue there: "The nonwage garnishment action has its own exemption for pension plans and does not apply here." Berkshire, 225 Ill. App. 3d at 697-98. The context of this statement was this court's observation that the trial court misspoke: "We must also note that while the trial court referred to a nonwage garnishment, the procedure employed by plaintiff was a [different] procedure." Berkshire, 225 Ill. App. 3d at 697. Contextual details aside, it is true that Berkshire construed section 12-1006 of the Code (735 ILCS 5/12-1006 (West 2006)) (exempting retirement plans from seizure for the satisfaction of debts), while this case involves section 12-704 of the Code (735 ILCS 5/12-704 (West 2006)) (exempting benefits and refunds payable by pension or retirement funds from garnishment). At the outset of its analysis, the Berkshire court generalized its holding beyond section 12-1006 when it noted: "In the last decade, the legislature has greatly increased the protection afforded [to retirement funds] by the exemption *statutes*." (Emphasis added). Berkshire, 225 Ill. App. 3d at 697. We believe the Berkshire holding, that untraceable retirement funds are not exempt from garnishment, applies equally to section 12-704. The trial court did not err in its reliance on Berkshire.

17

1-07-0135 & 1-07-2142, Cons.

Stephen next argues that the trial court should have exempted the full $3,000 garnished as personal property under section 12-1001(b) of the Code (735 ILCS 5/12-1001(b) (West 2006)). This section exempts from garnishment personal property, including "[t]he debtor's equity interest, not to exceed $4,000 in value, in any other property." 735 ILCS 5/12-1001(b) (West 2006). Stephen maintains that funds deposited in his business accounts after the date of service of the garnishment summons should not have been counted by the court in enforcing the $3,000 judgment under Zucker v. United States Computer Corp., 85 Ill. App. 3d 759, 766, 408 N.E.2d 41 (1980) (indebtedness is to be measured as of the date of service of the garnishment summons and so if a bank has not had reasonable time to learn of a deposit on the date of the summons, there can be no indebtedness for garnishment purposes).

Stephen's arguments are at odds with the facts of the case. On January 2, 2007, First Midwest received the garnishment summons, causing it to hold $3,000 in two of Stephen's personal accounts. Under section 12-707 of the Code (735 ILCS 5/12-707(a)), a judgment or the balance due on a judgment becomes a lien on the property held by the garnishee at the time of the service of the garnishment summons and remains a lien on the property pending a garnishment proceeding. "It is readily apparent that this lien attaches at the time the garnishee is served with process." Maplehurst Farms, Inc. v. Greater Rockford Energy & Technology Co., 167 Ill. App. 3d 767, 769, 521 N.E.2d 1270 (1988).

Here, a lien attached to Stephen's First Midwest personal accounts when the garnishment summons was served on January 2, 2007. Stephen's business accounts, including deposits after the date of service, were not subject to the lien. Stephen's claim of an exemption to garnishments

18

under section 12-1001 is unsupported under the facts of this case.

The trial court determined that Stephen's reliance on Zucker was misplaced and we agree. In Zucker, the facts differed in that the bank there held no funds of the judgment debtor on the date the garnishment summons was served. Zucker, 85 Ill. App. 3d at 761. Here, it is undisputed that First Midwest Bank held $3,000 from Stephen's personal accounts when the garnishment summons was served and that a lien attached at that time. The trial court did not err in denying Stephen's motion to reconsider the denial of his claimed exemptions to garnishment.

In summary, we conclude: (1) there is no legal bar to counting Stephen's IRA withdrawals as income despite their inclusion in the property settlement; (2) the trial court did not abuse its discretion in denying Stephen's petition for modification of child support; (3) the trial court did not abuse its discretion in denying Stephen's motion for monetary sanctions against Farley; (4) the trial court should not have denied Stephen's request for a separate hearing on attorney fees and we remand for such a hearing; and (5) Stephen's claims of exemptions to garnishment are without merit.

The judgment of the circuit court is affirmed in part, reversed in part and remanded for a hearing on attorney fees.

Affirmed in part and reversed in part; cause remanded.

O'MALLEY, P.J., and McBRIDE, J., concur.